Gabriel P. McGaha  
Sr. Counsel

Legal – Employment Litigation  
3620 Hacks Cross Rd  
Building B, 3rd Floor  
Memphis, TN 38125

Telephone 901-434-3131  
gabriel.mcgaha@fedex.com



June 7, 2024

**VIA ECF**  
Honorable Dora L. Irizarry  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    *Kevin Campbell v. Federal Express Corporation, et al.* – 22-cv-07662 (DLI) (MMH)

Your Honor:

      Pursuant to Section IV(A)(3) of Your Honor's Individual Rules of Practice. Defendants in the above referenced matter respond to Plaintiff Kevin Campbell's premotion conference letter as follows:[1]

**A.  Alleged Discrete Acts of Discrimination[2]**

      **1.    Cutting Campbell's hours -** Campbell alleges that "[i]n 2018, Nunez began cutting Campbell's hours without legitimate explanation, to the detriment of Campbell and other workers, since there was a great deal of work to complete." [ECF 1, PageID # 3, ¶ 22.] However, Campbell has provided no evidence to support his claim that FedEx cut his hours. To the contrary,

---

[1] To the extent the Court grants Campbell's request to file a dispositive motion, Defendants request that Campbell be limited to the specific grounds stated in his pre-motion conference letter and that he be expressly prohibited from moving for summary judgment on additional grounds to which Defendants have not had an opportunity to respond.

[2] To establish discrimination under Title VII, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id*. at 570 (citation omitted). Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer makes such a showing, "the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination." *Id.* Discrimination claims brought under the NYCHRL and NYSHRL are also analyzed using the same basic framework as Title VII claims, except that "the plaintiff need only show differential treatment -- that she is treated 'less well' -- because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110 (2d Cir. 2013). Nonetheless, "district courts must be mindful that the NYCHRL is not a general civility code." *Id.* (citation omitted). The plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive." *Id*. The standard of liability under the NYSHRL is treated as akin to the standard under the NYCHRL. *See Valerio v. Metro. Trans. Auth.*, 23-cv-1938, 2024 WL 2305386, at *5 (S.D.N.Y. May 20, 2024).

Campbell's Earnings Report clearly shows Campbell's hours did not decrease in 2018. There is, therefore, no evidence to support this claim.

2. **Campbell's termination -** Campbell was terminated after an investigation conducted determined he violated the company's Acceptable Conduct Policy by participating in an altercation with another employee, Augusto Alzate (Hispanic). Both Campbell and Alzate were terminated. Campbell's direct supervisor, Monty Bovell (Black), in consultation with HR Advisor, Lance Reyes (Black), made the decision to terminate Campbell after reviewing the FedEx Security Investigation Report and surveillance footage provided by FedEx Security. Both Reyes and Bovell believed termination was appropriate. Thus, FedEx had a legitimate non-discriminatory reason for terminating Campbell's employment and there is no evidence of discriminatory animus.

B. **Alleged Non-Tangible Acts of Discrimination**

1. **Alleged statement from Henry Nunez -** Campbell alleges that in the "summer of 2018" his supervisor at the time, Henry Nunez (Hispanic), stated "[b]lack people are always making excuses about why they can't do things. This is why I hate working with Black people"[3] Campbell testified that he notified Defendant Eric Warnders (White) that Nunez made a statement he found offensive, and that Warnders spoke with Nunez who apologized the same day.[4] Campbell testified that he believed this incident was handled "in a professional way" that Warnders "did what he needed to do to make it go away." Thus, Campbell testified that Defendants took appropriate action to rectify the alleged conduct. Accordingly, this alleged statement is not actionable.

2. **Peter Lorenzi Incident -** On June 1, 2020, a co-worker Peter Lorenzi (White), called Campbell "Trayvon" and made a statement relating to running water in the projects. After Campbell reported this incident, the employee was immediately suspended pending investigation. Following the investigation, the employee was suspended for five days without pay and received a Warning Letter (disciplinary write up). Thus, Defendants took action to prevent discrimination when reported. Indeed, Campbell testified that he agreed that Lorenzi's suspension was an appropriate response. Accordingly, the statements made during the Peter Lorenzi incident do not provide a basis for a discrimination claim.

3. **Other Alleged Discriminatory Statements -** Campbell also alleges that co-workers (some of whom he could not name) made racially discriminatory statements to him (see grounds (5), (6), (7)). However, Campbell admits he did not report any of these alleged statements until after he was terminated. Therefore, these alleged statements are not actionable because Defendants were not aware of them until after Campbell was terminated.

---

[3] Nunez vehemently denies making this statement at any time. Further, Campbell offers no witness testimony or any other evidence to corroborate this baseless claim.

[4] Both Warnders and Nunez deny Campbell ever reported Nunez made a statement related in any way to race but admit Campbell reported that Nunez made a statement Campbell found offensive.

2

C. **Retaliation**[5]

      Campbell's pre-motion conference letter falsely states that "Mr. Campbell also complained about the above discrimination to FedEx managers, who did nothing but lay the pretextual groundwork for his termination." [ECF 43, PageID # 289.] In truth, Campbell testified that the only incidents he reported was the alleged statement by Nunez in "summer 2018" and the incident involving Peter Lorenzi in June 2020, both of which he testified Defendants handled appropriately. In any case, Campbell's retaliation claims fail as a matter of law for many reasons, including the following:

      1.     **Labeling Mr. Campbell a snitch -** There is no evidence that anyone at FedEx ever called Campbell a "snitch" and it is undisputed that Campbell never reported that anyone did. Even if someone had called Campbell a "snitch" and even if he had reported it, it does not rise to level of conduct that would constitute an adverse employment action under any of the statues as issue. *See Calise v. New York State Dep't of Motor Vehicles*, 2018 WL 4350247, at *6 (S.D.N.Y. Sept. 12, 2018) (finding that plaintiff failed to state a claim for retaliation where plaintiff alleged other employees called him a "snitch")

      2.     **Giving Campbell broken package scanners to attempt to force failure –** It is undisputed that the person who allegedly gave Campbell broken package scanners was not a management employee. Furthermore, Campbell never reported this to management. Therefore, even if true, the employee's actions cannot be imputed to Defendants to give rise to a retaliation claim under any of the statutes at issue.

      3.     **Termination and post-termination grievance process –** FedEx's decision to terminate Campbell and subsequent decision to uphold the termination do not give rise to a retaliation claim, in part, for the reasons stated *supra*, Sec. A(2). Further, no post-termination claims are actionable because Campbell failed to exhaust any actions that occurred following his termination.[6]

Respectfully,

*Gabriel McGaha*
Gabriel P. McGaha

---

[5] Campbell brings claims for retaliation under Title VII, the NYSHRL, and the NYCHRL. "To sustain a prima facie case of retaliation under Title VII, a plaintiff must demonstrate '(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Mitchell v. State Univ. of New York Upstate Med. Univ.*, 723 F. App'x 62, 63 (2d Cir. 2018). In similar form to Title VII, "[i]n order to state a claim of retaliation under the NYSHRL and NYCHRL, a plaintiff must allege: (1) The participation in a protected activity, (2) That the defendant was aware of the protected activity, (3) An adverse employment action, or under the NYCHRL, the employer's actions disadvantaged plaintiff and were reasonably likely to deter a person from engaging in protected activity, [and] (4) A causal connection between the protected activity and the adverse employment action." Black v. ESPN, Inc., 70 Misc. 3d 1217(A), 139 N.Y.S. 3d 523 (N.Y. Sup. Ct. 2021).

[6] Campbell's EEOC charge states that the last date of discrimination was his date of termination, May 25, 2021. Campbell never amended his charge to assert post-termination claims.