UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X    22 CV 7662 (DLI)(MMH)

KEVIN CAMPBELL,

Oral Argument Requested

                                        Plaintiff,

                                                                **MEMORANDUM OF LAW IN**
                    -against-                                    **SUPPORT OF PLAINTIFF'S**
                                                                **MOTION FOR SUMMARY**
FEDERAL EXPRESS CORPORATION A/K/A FEDEX        **JUDGMENT**
EXPRESS, AND ERIC WARNDERS, *INDIVIDUALLY*,

                                        Defendants.

-------------------------------------------------------------------------X

Jessica Massimi
**Massimi Law PLLC**
*Attorney for Plaintiff Kevin Campbell*
99 Wall Street, Suite 1264
NY, NY 10005
Jessica.Massimi@gmail.com


Remy Green
**COHEN&GREEN P.L.L.C.**
*Attorney for Plaintiff Kevin Campbell*
1639 Centre Street, Suite 216
Ridgewood, NY 11385
Remy@femmelaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 7

    I.      TITLE VII AND NYSHRL ........................................................................................ 7

        A.      HOSTILE WORK ENVIRONMENT ...................................................... 7

        B.      DISCRIMINATORY TERMINATION ................................................ 11

        C.      RETALIATION ....................................................................................... 14

        D.      DEFENDANTS DO NOT AND CANNOT REBUT THE PRESUMPTION ........ 17

           i.      Jose Moreno cannot provide testimony. ................................... 18

          ii.      Surveillance videos are not admissible. ................................. 19

    II.      NYCHRL: ...................................................................................................... 22

        A.      DEFENDANTS TREATED MR. CAMPBELL "LESS WELL" BECAUSE OF HIS RACE ................................................................................................. 22

        B.      DEFENDANTS' RETALIATION AGAINST MR. CAMPBELL ......................... 24

        C.      DEFENDANTS CANNOT REBUT THE PRESUMPTION .................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. United Hospice, Inc.*,
631 F. Supp. 3d 89, 2022 U.S. Dist. LEXIS 175313, 2022 WL 4485379
(S.D.N.Y. 2022) ................................................................................................................11

*Arazi v. Cohen Bros. Realty Corp.*,
2022 U.S. Dist. LEXIS 56549, 2022 WL 912940 (S.D.N.Y. March 28, 2022) ...............12, 25

*Banks v. GM, LLC*,
81 F.4th 242, 2023 U.S. App. LEXIS 23757 (2d Cir. Sept. 7, 2023) .............................8, 9, 10

*Beards v. Bronxcare Health Sys.*,
2021 U.S. Dist. LEXIS 33762, 2021 WL 704177 (S.D.N.Y. Feb. 23, 2021).........................13

*Bowen-Hooks v. City of New York*,
13 F. Supp. 3d 179 (E.D.N.Y. 2014) ....................................................................................15

*Bucalo v. Shelter Island Union Free Sch. Dist.*,
691 F.3d 119 (2d Cir. 2012).................................................................................................12

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
769 F.2d 919 (2d Cir. 1985).................................................................................................18

*Carr v. N.Y.C. Transit Auth.*,
76 F.4th 172 (2d Cir. 2023) ............................................................................................14, 18

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*,
735 F.3d 114 (2d Cir. 2013)...................................................................................................7

*Ebewo v. Martinez*,
309 F. Supp. 2d 600 (S.D.N.Y. 2004)...................................................................................18

*Espinal v. Goord*,
558 F.3d 119, 2009 U.S. App. LEXIS 5853 (2d Cir. Feb. 2, 2009) ......................................17

*Faragher v. City of Boca Raton*,
524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).......................................................9

*Farmer v. Shake Shack Enters., LLC*,
473 F. Supp. 3d 309, 2020 U.S. Dist. LEXIS 128272, 104 Empl. Prac. Dec.
(CCH) P46,566, 2020 WL 4194860 (S.D.N.Y. July 21, 2020) .............................................14

ii

*Gorokhovsky v. N.Y.C. Housing Auth.*,
 552 F. App'x 100 (2d Cir. 2014) ........................................................................23

*Hernandez v. Kaisman*,
 103 A.D.3d 106, 957 N.Y.S.2d 53, 2012 N.Y. App. Div. LEXIS 9069, 2012
 NY Slip Op 9191 ...............................................................................................23, 24

*Hicks v. Baines*,
 593 F.3d 159 (2d Cir. 2010) ...................................................................................15

*Horror Inc. v. Miller*,
 15 F.4th 232 (2d Cir. 2021) .......................................................................................7

*Howley v. Town of Stratford*,
 217 F.3d 141, 2000 U.S. App. LEXIS 14483, 83 Fair Empl. Prac. Cas. (BNA)
 293, 78 Empl. Prac. Dec. (CCH) P40,120 ........................................................10, 11

*Kirkland v. Cablevision Sys.*,
 760 F.3d 223 (2d Cir. 2014)....................................................................................12

*Kwan v. Andalex Grp., LLC*,
 737 F.3d 834, 2013 U.S. App. LEXIS 24838 (2d Cir., December 16, 2013)..........17

*Leibowitz v. Cornell Univ.*,
 584 F.3d 487, 2009 U.S. App. LEXIS 23346, 107 Fair Empl. Prac. Cas.
 (BNA) 897, 92 Empl. Prac. Dec. (CCH) P43,731 (2d Cir. Oct. 23, 2009)..............12

*Leo v. Long Island R.R.*,
 307 F.R.D. 314, 2015 U.S. Dist. LEXIS 56953 (S.D.N.Y. April 30, 2015).....................19, 20

*Littlejohn v. City of New York*,
 795 F.3d 297 (2d Cir. 2015)...................................................................11, 16, 17

*Maher v. City of New York*,
 No. 9-CV-2679 (ENV) (JO), 2011 U.S. Dist. LEXIS 151465, 2011 WL
 7025807 (E.D.N.Y. Jan. 10, 2011) .........................................................................6, 7

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973).......................................................................................11, 12, 14

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*.,
 715 F.3d 102, 2013 U.S. App. LEXIS 8494, 118 Fair Empl. Prac. Cas. (BNA)
 238, 96 Empl. Prac. Dec. (CCH) P44,825, 2013 WL 1776643 (2d. Cir. 2013)
 ........................................................................................................22, 23, 24, 25

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
 164 F.3d 736 (2d Cir. 1998).....................................................................................18

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1998)................................................................................11

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)..................................................................................7

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)..................................................................................18

*Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*,
    No. 17-CV-5670, 2020 U.S. Dist. LEXIS 29109, 2020 WL 838279 (S.D.N.Y.
    Feb. 20, 2020) ......................................................................................................7

*Reichman v. City of New York*,
    179 A.D.3d 1115, 117 N.Y.S.3d 280, 2020 N.Y. App. Div. LEXIS 595, 2020
    NY Slip Op 00631, 2020 WL 465159 (2d Dept. Jan 29, 2020) ..............................23

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
    743 F.3d 11 (2d Cir. 2014)..................................................................................15

*Rodriguez v. Vill. Green Realty, Inc.*,
    788 F.3d 31 (2d Cir. 2015)..................................................................................18

*Rosen v. Thornburgh*,
    928 F.2d 528 (2d Cir. 1991)................................................................................13

*Sanderson v. Leg Apparel LLC*,
    2020 U.S. Dist. LEXIS 234190, 2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) ....................24

*Star Ins. Co. v. A&J Constr. of New York, Inc.*,
    2017 U.S. Dist. LEXIS 211081, 2017 WL 6568061 (S.D.N.Y. Dec. 22, 2017) ....................18

*Tolbert v. Smith*,
    790 F.3d 427, 2015 U.S. App. LEXIS 10656, 127 Fair Empl. Prac. Cas.
    (BNA) 705, 99 Empl. Prac. Dec. (CCH) P45,344 (2d Cir. June 24, 2015) ............................11

*Torcivia v Suffolk County*,
    17 F.4th 342, 354 (2d Cir 2021) ..........................................................................7

*United States v. 143-147 E. 23rd St.*,
    77 F.3d 648, 1996 U.S. App. LEXIS 3139 (2d Cir. Feb 26, 1996) ........................................18

*United States v. Ida*,
    1997 U.S. Dist. LEXIS 2997, 1997 WL 122753 (S.D.N.Y. March 18, 1997) ......................20

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004)..................................................................................7

*Zeng v. N.Y. City Hous. Auth.*,
    2023 U.S. App. LEXIS 18035, 2023 WL 4553416 (2d. Cir. July 17, 2023)................... *passim*

**Statutes**

42 U.S.C. § 2000e-3(a) ...........................................................................................14

**Other Authorities**

Fed. R. Civ. P. 26(a) ...................................................................................... *passim*

Fed. R. Civ. P. 56(a) ...............................................................................................7

Fed. R. Civ. P. 56(c) .............................................................................................18

Fed. R. Ev. 901(b)..................................................................................................19

N.Y.C. Admin. Code § 8-107(1)(a) .......................................................................22

N.Y.C. Admin. Code § 8-107(7)............................................................................25

## PRELIMINARY STATEMENT

Plaintiff, Kevin Campbell, is a Black man and former employee of the Defendants, Federal Express Corporation a/k/a FedEx Express ("FedEx") and Eric Warnders. Summary judgment in Plaintiff's favor is appropriate because there is no factual dispute that he has met his *prima facie* burden of establishing employment discrimination and retaliation. That fact creates a presumption in his favor, and Defendants are unable to rebut this presumption with the required admissible evidence of a legitimate nondiscriminatory reason for their adverse employment decisions. Specifically, regarding Defendants' termination of Plaintiff and their post-termination conduct, as the proponent of their own video recordings and witness statement of former employee Jose Moreno, Defendants bear the burden of demonstrating the admissibility of this evidence and they cannot meet this burden. Plaintiff is also entitled to summary judgment on his City law claims because Defendants did not plead the affirmative defense of "petty slights or trivial inconveniences."

## STATEMENT OF FACTS

Mr. Campbell began working for Defendants on April 1, 2017 and was a good employee. Pl. 56.1 ¶¶ 1, 34-39.[1] Defendants and their employees discriminated against Mr. Campbell daily through their racially hostile work environment and adverse employment actions, Pl. 56.1 ¶¶ 40-69, including, but not limited to (1) cutting Mr. Campbell's hours because he is Black, Pl. 56.1¶¶ 70-76; (2) stating "Black people are always making excuses about why they can't do things. This is why I hate working with Black people", Pl. 56.1¶ 77; (3) following Mr. Campbell while calling Mr. Campbell "Trayvon" – a reference to dead Black teenager Trayvon Martin – during the summer of 2020 immediately following the death of George Floyd, Pl. 56.1¶¶ 78-82; (4) stating

---

[1] *See* Pl. 56.1 ¶¶ 2-33 for a list of FedEx employees, their races, and titles.

"Why are you washing your hands for so long? Is it because you are not used to having running water in the projects?", Pl. 56.1¶¶ 83-84; (5) stating "how is your new TV? I am talking about the TV you and your sister stole from Radio Shack this weekend during the riots", Pl. 56.1¶¶ 85-89; (6) stating "How about I put you in that cage like the gorilla you are", Pl. 56.1¶ 90; (7) stating, about Plaintiff, "Doesn't this guy look like someone who would steal your car radio and then try to sell it back to you", Pl. 56.1¶¶ 91-93; (8) permitting Augusto Alzate to verbally abuse him daily in full view of other employees and managers, Pl. 56.1¶¶ 94-111; and (9) ultimately terminating Mr. Campbell's employment after he was attacked by Mr. Alzate and labeling Mr. Campbell as "aggressive." Pl. 56.1¶¶ 112-166. This discrimination and harassment meet Plaintiff's initial burden of demonstrating a hostile work environment and adverse employment actions.

In creating this hostile work environment, Defendants deviated from their own policies and procedures, Pl. 56.1 ¶¶ 359-369, including that any employee who witnesses discrimination must report it even where there is no complaint. Pl. 56.1 ¶¶ 370-374. At times, the managers testified to a complete ignorance of Defendants' policies and procedures regarding their alleged anti-discrimination policies, and a refusal to accept racism exists. Pl. 56.1 ¶¶ 375-395; *see specifically,* for example, ¶ 393 (manager Steve Pasqualicchio testifying that when he hears a racial slur from a white person to a Black person, he does not have an obligation to report it).

Defendants' testimony makes clear that the kind of racist abuse in the above statements was widely accepted and commonplace in Mr. Campbell's FedEx station, Pl. 56.1 ¶¶ 40-111, 185-207, and that Defendants' disciplinary procedures were disparately applied against Mr. Campbell because he is Black.

For example, Peter Lorenzi is Hispanic and is the employee who followed Mr. Campbell while referring to him as "Trayvon Martin." P. 56.1 ¶¶ 78-82. Mr. Lorenzi was only suspended

from work for 5 days and but found to violate Policy 2-5 (Acceptable Conduct), the same policy for which Mr. Campbell was terminated for allegedly violating. Pl. 56.1 ¶¶ 178-181. Even though FedEx claims to have a zero-tolerance policy for discrimination, Pl. 56.1 ¶¶ 360-366, 396, Defendants chose to give Mr. Lorenzi the benefit of their progressive discipline procedures and merely place him on suspension rather than terminating him, notwithstanding his blatant racism and harassment of Mr. Campbell. *See* Pl. 56.1 ¶¶ 397-404 for Defendants' Progressive Discipline Procedures; *see also* Pl. 56.1 ¶¶ 388 (manager Steve Pasqualicchio testifying that findings of racial discrimination do not necessarily result in termination of the offender); *compare* to Defendants' decision to deprive Mr. Campbell of that same progressive discipline. Pl. 56.1 ¶ 135.

Mr. Campbell complained about the above discrimination to FedEx managers or the managers were otherwise aware of the discrimination, Pl. 56.1 ¶¶ 167-184, 245, 292-358, and they did nothing but lay the pretextual groundwork for his termination. Specifically, Defendants retaliated by (1) failing to protect the confidentiality of Mr. Campbell's complaints against Mr. Lorenzi and labeling Mr. Campbell a snitch, Pl. 56.1 ¶¶ 208-230, 234-242; (2) giving him broken package scanners to attempt to force failure, Pl. 56.1 ¶¶ 231-233; (3) failing to intervene to stop Augusto Alzate's daily public tirades against Mr. Campbell, Pl. 56.1 ¶¶ 94-111; (4) ultimately terminating Mr. Campbell's employment after Mr. Alzate attacked him with a box cutter, Pl. 56.1 ¶¶ 112-166; (5) constructing a knowingly false narrative during his post-termination grievance proceeding that Mr. Campbell was aggressive and "bumped" the person who attacked him despite (undisputedly) subjectively finding the "bump[]" allegation not credible and having no evidence for the claim, Pl. 56.1 ¶¶ 144, 164, 243-293; and (6) conducting a sham Internal EEO investigation into Mr. Campbell's complaints of discrimination to further discredit his discrimination complaints and to affirmatively cover their own misconduct. Pl. 56.1 ¶¶ 294-358.

The events immediately preceding Mr. Campbell's termination began on May 18, 2021, when Mr. Campell and Mr. Alzate were working the morning "sort." Pl. 56.1 ¶ 112. Mr. Alzate apparently did not think Mr. Campbell was working fast enough, so Mr. Alzate smacked and forcefully pushed a box at Mr. Campbell thereby intentionally hitting him with the box, and pulled a boxcutter on him. Pl. 56.1 ¶¶ 113-123.

Defendants, at Defendant Warnders' direction, Pl. 56.1 ¶ 135, terminated Mr. Campbell, later falsely claiming they did so because he "shoulder bumped" Mr. Alzate. Pl. 56.1 ¶¶ 144, 265. Defendants also used this pretext to uphold Mr. Campbell's termination in the GFT process, Pl. Pl. 56.1 ¶¶ 264-273, and in their statement to the EEOC. Pl. 56.1 ¶ 163. However, the Defendants do not have any admissible evidence to support their pretextual basis for terminating Plaintiff.

Nanette Malebranch, tri-state district manager for Defendant Fedex, and highest-ranking FedEx employee deposed in this case, testified that the only source of purported evidence regarding this alleged bump is a statement from a former employee, Jose Moreno, who was not involved in the May 18, 2021 incident.[2] Pl. 56.1 ¶¶ 265-267. Yet, Defendants did not identify Mr. Moreno in their Rule 26(a) disclosures. Pl. 56.1 ¶ 270. Defendants have not produced Mr. Moreno's statement in any admissible or credible form. Pl. 56.1 ¶ 269.

Likewise, Defendants produced two video surveillance recordings in this case (the "FedEx

---

[2] Defendants do not even appear to be relying on Mr. Alzate's statements. Indeed, one of the conclusions reached by FedEx following their investigation was that "A review of Alzate's written statement was not consistent with the VSS review." Defendants' conclusion regarding Alzate's lack of credibility is memorialized in their Security Investigative Report. Ex. 16. Based on Defendants' own conclusion that Mr. Alzate's version of events is not credible *in the investigation,* no reasonable jury could conclude that Defendants' stated reason for terminating Plaintiff was sincere. Thus, this alleged physical contact from Plaintiff fails to rebut the presumption, or serve as anything other than a pretextual cover for Defendants' racial discrimination and retaliation.

Videos" or "videos"), but have given inconsistent, ever-evolving statements about what their videos show.

For example, at the time of Mr. Campbell's termination, on May 25, 2021, Defendant FedEx issued Plaintiff a termination letter claiming that, following their investigation, they determined that he engaged in "disruptive behavior with another co-worker." In this letter, Defendants do not accuse Mr. Campbell of engaging in any more specific or severe behavior warranting his termination. *Id.*; see also Pl. 56.1 ¶¶ 140-141.

Following Plaintiff filing his GFT where he complained again of discrimination, Defendant Warnders sent an email to Nan Malebranche (the "June 1st Email") referring her to the attached video and stills, telling Ms. Malebranch "As you can see there was initial contact on Kevin's part." Pl. 56.1 ¶ 248, and that "one employee clearly states that Kevin threw his shoulder into Alzate and got right into his face." Pl. 56.1 ¶ 250.[3] And Defendants falsely stated in their EEOC submission that "the video footage showed Campbell . . . made physical contact with Alzate in the chest area", Pl. 56.1 ¶ 163, and refused to produce the video during the EEOC process. Pl. 56.1 ¶ 290. Whereas Nan Malebranche testified that the security videos do not show Mr. Campbell making physical contact with Alzate. Pl. 56.1 ¶ 164. [4]

Defendants admit that their video recordings missed some angles and do not actually show Campbell engaging in the alleged bump. Pl. 56.1 ¶¶ 164-165, 192, 249, 251. Defendants made no effort to authenticate or establish the accuracy of the videos during discovery. They never showed

---

[3] However, Warnders actually believed Alzate started the altercation and that Alzate initially made contact with Mr. Campbell. Pl. 56.1 ¶ 249

[4] Plaintiff does not rely on the FedEx videos but references the Defendants' ever-evolving testimony and statements about their videos to demonstrate precisely why the Defendants cannot rely on their videos for evidence.

5

the videos to Mr. Campbell or Mr. Alzate, and never identified any authenticating witness such as the person responsible for installing and maintaining the equipment which according to Defendants only partially recorded the encounter. Thus, the videos do not provide admissible evidence which the Defendants could use to establish any defense.

In his June 1st Email, Defendant Warnders omitted the information from James Cahill that Alzate approached Campbell's work area in a clearly agitated state flailing his arms and pushing several boxes in Campbell's direction. Pl. 56.1 ¶¶ 248-250, 254. Given the Defendants' testimony about what the videos show, the claim "there was initial contact on Kevin's part" was invented — a tacit admission of what the videos would *need* to show (but which Defendants have acknowledged do not show) for the discipline to be warranted. Then, on June 4, 2021, Defendants issued yet another letter to Mr. Campbell lodging the following *new* allegations, accusing Mr. Campbell of: (1) being "involved in a verbal and physical altercation with another employee;" (2) placing another employee in imminent fear for his personal safety"; and (3) being "aggressive." Pl. 56.1 ¶ 255.

Even more allegations from Defendants were forthcoming when Nan Malebranche accused Mr. Campbell of "triggering the physical altercation" and that "[a] close look at the actions that led to the altercation, as well as the statements from witnesses, indicates [Mr. Campbell's] responsibility for inciting the other employee." Pl. 56.1 ¶¶ 271-272.

Defendants' post-termination allegations were used to further discriminate against Plaintiff by depriving him of the full benefit of his GFT through all three steps of the process to keep him out of his job. Pl. 56.1 ¶¶ 273-293. Following his failed GFT, Defendants engaged in a sham IEEO investigation into Mr. Campbell's complaints of discrimination where Defendants misused their own IEEO process to continue building their false claims against Mr. Campbell and sanction their

own illegal conduct. Pl. 56.1 ¶¶ 294-358.

## LEGAL STANDARD

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123-24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v Suffolk County*, 17 F.4th 342, 354 (2d Cir 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 U.S. Dist. LEXIS 29109, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and quotation marks omitted).

## I.    TITLE VII AND NYSHRL

### A.  HOSTILE WORK ENVIRONMENT

A Plaintiff "can secure summary judgment in his favor if deposition testimony establishe[s] the elements of his claim and is unrebutted by other evidence." *Maher v. City of New York*, No. 9-CV-2679 (ENV) (JO), 2011 U.S. Dist. LEXIS 151465, 2011 WL 7025807, at *5 n.6 (E.D.N.Y.

Jan. 10, 2011), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 4368, 2012 WL 113559 (ED.N.Y. Jan. 13, 2012).

On a hostile work environment claim, "a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Zeng v. N.Y. City Hous. Auth.*, 2023 U.S. App. LEXIS 18035, *5, 2023 WL 4553416 (2d. Cir. July 17, 2023) (citations and internal quotation marks omitted).[5] Courts "consider five non-exclusive factors in determining the existence of a hostile work environment: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Id.*

"[C]ase law treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis; the last three factors are specific considerations within the severity inquiry. Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if not constant basis and behaves in a physically threatening manner." *Id.* "[W]e have often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe." *Id.*

"Evidence of a general work atmosphere . . . -- as well as evidence of specific hostility directed toward the plaintiff -- is an important factor in evaluating the claim." *Banks v. GM, LLC*,

---

[5] Hostile work environment claims brought under Title VII, and the NYSHRL are assessed using the same standard. *Banks v. GM, LLC*, 81 F.4th 242, 261-262, 2023 U.S. App. LEXIS 23757, *26 (2d Cir. Sept. 7, 2023).

81 F.4th 242, 262, 2023 U.S. App. LEXIS 23757, *28 (2d Cir. Sept. 7, 2023). "Incidents that are not facially discriminatory may sometimes be used to establish a course of sex [and/or race]-based discrimination." *Id.* Moreover, "conduct not directly targeted at or spoken to an individual but purposefully taking place in [his] presence can nevertheless transform [his] work environment into a hostile or abusive one." *Id.*

In *Zeng*, the Second Circuit reversed the District Court's dismissal of the Plaintiff's hostile work environment claims on summary judgment where the District Court failed to credit the Plaintiff's allegations that coworkers and supervisors invaded her personal space and shouted racial and sexist slurs, forced her to work in unsafe conditions where she was threatened, and improperly limited the Plaintiff's hostile work environment claim to four isolated instances where the Plaintiff had testified that those instances were illustrations of insults that occurred on a more frequent basis. *Id.,* at 14; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (standards for what amounts to actionable abuse are the same for racial and sexual harassment).

Defendants subjected Mr. Campbell to near-daily racial harassment and discrimination, Pl. 56.1 ¶¶ 40-111, which often involved physical threats such as following Mr. Campbell, bumping into him, and publicly screaming at and disparaging him. Pl. 56.1 ¶¶ 80, 98-106. Defendants called Mr. Campbell "lazy" and cut his hours because he is Black. Pl. 56.1 ¶¶ 46, 70-76. Henry Nunez constantly made disparaging comments about Black people, including referring to their hair and work ethic in a derogatory manner. Pl. 56.1 ¶¶ 54-57.

Aldamel Spencer, another Black employee, also backed up Plaintiff's claims that the Defendants' workplace is permeated with discriminatory animus toward Black people, including that Henry Nunez does not like Black people. Pl. 56.1 ¶¶ 63-67. Monty Bovell, a Black man and

former manager, admitted that he heard about discriminatory issues at Fedex when he was a courier. Pl. 56.1 ¶¶ 67.

A few times per week, FedEx employees made racist statements about George Floyd, and called Black people — including Mr. Campbell specifically — monkeys and thieves, causing Mr. Campbell to not even want to go to work. Pl. 56.1 ¶¶ 47-48, 69. Peter Lorenzi referred to Mr. Campbell as "Trayvon Martin", a dead Black teenager, while following Mr. Campbell around the station — an action intended to intimidate Mr. Campbell. Pl. 56.1 ¶¶ 78-84. Another white employee publicly accused Mr. Campbell "and [his] sister" of stealing property "during the riots" (referring to protests over the murder of George Floyd). Pl. 56.1 ¶¶ 85-89.

In or around July 2020, "JC" and Jeffrey Durante, Mr. Campbell's co-workers, walked over to Campbell who was standing near a cage where packages are stored. Durante said to Campbell "How about I put you in that cage like the gorilla you are." Pl. 56.1 ¶ 90. A few days later, another employee publicly accused Mr. Campbell of being "someone who would steal your car radio." Pl. 56.1 ¶¶ 91-92.

With the approval of managers, Alzate engaged in daily public tirades against Plaintiff, admitting he cursed at and called Plaintiff "lazy" and publicly disparaged him, which is further evidence of the discrimination. Pl. 56.1 ¶¶ 94-111. *Banks v. GM, LLC*, 81 F.4th 242, 264, 2023 U.S. App. LEXIS 23757, *31 (Holding that a tirade involving obscene comments delivered loudly at length support a hostile work environment claim where they undermined Plaintiff's ability to fulfill work obligations); *see also Howley v. Town of Stratford*, 217 F.3d 141, 2000 U.S. App. LEXIS 14483, 83 Fair Empl. Prac. Cas. (BNA) 293, 78 Empl. Prac. Dec. (CCH) P40,120 (finding that a single incident can support a finding of hostile work environment where a woman was subjected to a verbal assault during a meeting by a male coworker who told her to "shut the f**k

up, you f***ing whining c***t" because this conduct "fomented . . . gender-based skepticism as to [Plaintiff's] competence.").

Alzate's tirades preceded the May 18, 2021 incident where he aggressively cursed and swore at Mr. Campbell in full view of other workers and managers, pushed a box at Mr. Campbell, hitting him with the box, and ultimately pulled a box cutter on him." Pl. 56.1 ¶¶ 112-166.

### B. DISCRIMINATORY TERMINATION

The Supreme Court has established a three-step burden-shifting framework for a plaintiff seeking to prove employment discrimination via circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). This framework also applies to claims under the NYSHRL. *Tolbert v. Smith*, 790 F.3d 427, 434, 2015 U.S. App. LEXIS 10656, *12, 127 Fair Empl. Prac. Cas. (BNA) 705, 99 Empl. Prac. Dec. (CCH) P45,344 (2d Cir. June 24, 2015). On summary judgment, a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that: "(1)[]he was within the protected class; (2) []he was qualified for the position; (3) []he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Alvarado v. United Hospice, Inc*., 631 F. Supp. 3d 89, 111, 2022 U.S. Dist. LEXIS 175313, *36, 2022 WL 4485379 (S.D.N.Y. 2022). Plaintiff's "burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal." *Norton v. Sam's Club*, 145 F.3d 114, 118, (2d Cir. 1998).

After such a showing, the court adopts "a temporary 'presumption' of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). In order to rebut the presumption, the employer must present "admissible evidence of a legitimate nondiscriminatory reason for its adverse employment decision." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000). The reason must be "legitimate," "nondiscriminatory," "clear," and "specific." *Bucalo*

*v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 132 (2d Cir. 2012). Once the employer presents such a reason, the burden shifts back to the plaintiff to show that the proffered reasons amount to a pretext for unlawful discrimination. *See McDonnell*, 411 U.S. at 804. If the employer puts forth evidence of a legitimate nondiscriminatory reason for its employment decision, plaintiff must offer admissible evidence showing "circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (alteration omitted).

Mr. Campbell is a Black man and therefore a member of a protected class. There is no dispute that he is qualified for his job since, among other things, Defendants have never claimed that he was terminated for any reason other than allegedly making physical contact with Augusto Alzate. Pl. 56.1 ¶¶ 34-39. Defendants subjected Mr. Campbell to an adverse employment action by terminating him. *Arazi v. Cohen Bros. Realty Corp.*, 2022 U.S. Dist. LEXIS 56549, *47-48, 2022 WL 912940 (S.D.N.Y. March 28, 2022) (termination is an adverse action under any standard).

Mr. Campbell's termination occurred under circumstances giving rise to an inference of discrimination. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502, 2009 U.S. App. LEXIS 23346, *33, 107 Fair Empl. Prac. Cas. (BNA) 897, 92 Empl. Prac. Dec. (CCH) P43,731 (2d Cir. Oct. 23, 2009). Where there is no direct evidence of

12

discrimination, a plaintiff may rely on indirect or circumstantial evidence. *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).

In *Beards v. Bronxcare Health Sys.*, 2021 U.S. Dist. LEXIS 33762, 2021 WL 704177 (S.D.N.Y. Feb. 23, 2021), the Court found that Plaintiff, "a Jewish, Caucasian male", *Id.* at *2, had met this burden on summary judgment where the Defendants fired him and had "made four to five derogatory statements about Jewish people and multiple statements to the effect that the BronxCare dental residency is a 'residency program for minorities'" since this indicated an intent to "purge non-minority dentists from the program." *Id.* at 33.

Mr. Campbell easily surpasses this standard. Here, Defendants engaged in ongoing racial harassment against Mr. Campbell by way of explicit racially degrading language and physical threats such following him around the station while referring to him as a dead Black teenager. *See for example* Pl. 56.1 ¶¶ 40-166. Defendants also applied their disciplinary policies less severely to non-Black employees such as Peter Lorenzi, who received a mere suspension rather than a termination, Pl. 56.1 ¶¶ 178-182,[6] and other managers such as Henry Nunez who is also still employed by Defendants. Peter Lorenzi was allowed to keep his job despite the fact that he was found to be in violation of Policy 2-5 (Acceptable Conduct), the same policy for which Mr. Campbell was terminated for allegedly violating, *Id.,* and despite the fact that his harassment of Plaintiff involved physical threats and actions such as following him around while referring to him as "Trayvon Martin." Compare with Pl. 56.1 ¶¶ 112-166. Mr. Campbell complained of the discrimination multiple times, or managers were otherwise aware of it and did nothing in violation

---

[6] Additionally, by failing to impose significant discipline on Lorenzi — despite a nominal "no tolerance" policy — Defendants deliberately sent the message that racist conduct like Lorenzi's would in fact be tolerated. That message was reinforced by leaking the complaint and labeling Plaintiff a "snitch."

of their policies. Pl. 56.1 ¶¶ 89, 91-92, 98, 167-184. Defendants believe all of this behavior, including Mr. Alzate hitting Mr. Campbell with a box, is acceptable. Pl. 56.1 ¶¶ 185-207.

### C. RETALIATION

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employees . . . because []he has opposed any practice made an unlawful employment practice by this subchapter, or because []he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). On a motion for summary judgment, retaliation claims under Title VII are evaluated under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The same standards govern retaliation under Title VII and the NYSHRL. *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330, 2020 U.S. Dist. LEXIS 128272, *30, 104 Empl. Prac. Dec. (CCH) P46,566, 2020 WL 4194860 (S.D.N.Y. July 21, 2020).

A plaintiff must initially establish a *prima facie* case of retaliation by showing that "(1) []he engaged in protected activity, (2) the defendant was aware of that activity, (3) []he was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023). With respect to a retaliation claim, the employee's admissible evidence must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Zeng v. N.Y. City Hous. Auth.*, 2023 U.S. App. LEXIS 18035, *15, 2023 WL 4553416

Actions are "materially adverse" for purposes of a retaliation claim if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge

of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)) (internal quotation marks omitted). Under Title VII, The Second Circuit has held that "petty slights or minor annoyances" are not materially adverse for purposes of a retaliation claim. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24-25 (2d Cir. 2014). When deciding a summary judgment motion as to a retaliation claim, in addition to considering alleged acts of retaliation on their own, courts must consider them in the aggregate, "as even minor acts of retaliation can be sufficiently 'substantial in gross' to be actionable." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 225 (E.D.N.Y. 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).

Mr. Campbell engaged in protected activity by complaining (1) to Defendants about Henry Nunez's discrimination (Pl. 56.1 ¶¶ 167-172); (2) to Defendants about Peter Lorenzi's discrimination (Pl. 56.1 ¶¶ 173-182); (3) to managers who were present when another employee made false comments accusing Plaintiff of stealing a car radio (Pl. 56.1 ¶¶ 183-184); and finally, (4) when Mr. Campbell filed his GFT detailing several instances of discrimination. Pl. 56.1 ¶¶ 243-247.

As soon as Mr. Campbell complained about Peter Lorenzi, Defendants began retaliating against him by labeling him a "snitch" and failing to keep his complaints confidential, resulting in confrontations with other employees and managers, giving him broken package scanners, vandalizing his car; Pl. 56.1 ¶¶ 208-242. Defendants also retaliated against Mr. Campbell by forcing him to work with Augusto Alzate who used verbally abusive and racist language against him daily, Pl. 56.1 ¶¶ 94-111, and ultimately by terminating his employment at Defendant Warnders' direction. Pl. 56.1 ¶¶ 135, 243.

On June 1, 2021 and continuing thereafter, Defendants also engaged in post-termination

15

fabrication of allegations against Mr. Campbell which are not supported by any evidence, thereby ensuring that he would not get the full benefit of the GFT process, and hastening his continued termination from FedEx. Pl. 56.1 ¶¶ 248-293. Defendants also used their own IEEO investigative process to affirmatively continue building their false allegations against Mr. Campbell by undercutting his legitimate complaints of discrimination and did not even follow their own policies for performing such an investigation. Pl. 56.1 ¶¶ 294-358.

"A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Mr. Campbell has submitted evidence of both. First, immediately following his complaints against Peter Lorenzi, Defendants failed to keep his complaint confidential resulting in Mr. Campbell being labeled a "snitch," being given broken package scanners, having his car keyed, and being confronted by managers in a threatening and ominous manner. Following his complaints, Mr. Campbell's racial harassment escalated.

Documentation reflects that a mere six days elapsed between the time Mr. Campbell filed his GFT on May 26, 2021, Pl. 56.1 ¶¶ 243-247, and June 1, 2021 when Defendants began changing their allegations to ensure Mr. Campbell would not receive the full benefit of the GFT. Pl. 56.1 ¶¶ 248-293.

These near-immediate time frames are well within the range recognized in the Second Circuit where a causal connection can be inferred. In *Zeng*, the Second Circuit noted that it "has

not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Id.* (citations omitted).  The Court further noted that the District Court had erred in its "exclusive focus on the formal date of termination" and therefore "failed to consider the undisputed evidence." *Id.*; *See also Espinal v. Goord*, 558 F.3d 119, 129, 2009 U.S. App. LEXIS 5853, *29 (2d Cir. Feb. 2, 2009) (finding six months sufficient to support the causal inference since "[i]t is plausible that the officers waited to exact their retaliation at an opportune time -- as when Espinal was involved in a fight with another inmate -- in order to have a ready explanation for any injuries suffered by Espinal.").

Mr. Campbell "may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846, 2013 U.S. App. LEXIS 24838, *26-29 (2d Cir., December 16, 2013).

The Defendants' stated key evidence justifying Mr. Campbell's termination is fabricated as evidenced by Defendants' inconsistent statements about that alleged evidence, and therefore lends support to Mr. Campbell's claims that retaliation was the but-for cause for his termination.  Defendants told the EEOC that "the video footage showed Campbell . . . made physical contact with Alzate in the chest area." Ex. 37, Defendants' EEOC Position Statement, p. 4. Yet, according to the Defendants, the security videos do not show Mr. Campbell making physical contact with Mr. Alzate. Ex. 3, Malebranche Tr. 75:15-17, 122:16-18.

### D.  DEFENDANTS DO NOT AND CANNOT REBUT THE PRESUMPTION

If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the alleged materially adverse action. *Carr* at

178.

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998); *see also* Fed. R. Civ. P. 56(c).

The burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015). However, Federal Rule of Civil Procedure 26(a) specifies that a party must initially disclose the names of any witnesses that the party may use to support its claims or defenses to not "sandbag" his or her adversary. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

### i.      *Jose Moreno cannot provide testimony.*

District Courts typically do not consider unsworn letters or affidavits when deciding a motion for summary judgment. *United States v. 143-147 E. 23rd St.*, 77 F.3d 648, 657, 1996 U.S. App. LEXIS 3139, *30 (2d Cir. Feb 26, 1996); *Star Ins. Co. v. A&J Constr. of New York, Inc.*, 2017 U.S. Dist. LEXIS 211081, 2017 WL 6568061, at *6 (S.D.N.Y. Dec. 22, 2017) (granting plaintiff's summary judgment motion where, *inter alia*, defendants supported one of their arguments "only with an unsigned affidavit . . . which is inadmissible"). Here, Defendants falsely claim that Mr. Campbell was terminated for "shoulder bump[ing]" Augusto Alzate and have used this pretext to uphold his termination. Pl. 56.1 ¶¶ 144, 265.

If a court excludes witness testimony as inadmissible under the Federal Rules of Evidence, "the summary judgment determination is made on a record that does not include that evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66–67 (2d Cir. 1997); *see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (concluding that a party

"cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial" and refusing to consider such evidence). On this record, Defendants have no evidence of any "shoulder bump."

Nan Malebranche testified that the sole basis for her assertion that Mr. Campbell made physical contact with Mr. Alzate was the statement of Jose Moreno. Pl. 56.1 ¶ 265-266. But Defendants did not list Mr. Moreno in their Rule 26(a) disclosures, have not produced any sworn statement from him, and have not attempted to depose him. Pl. 56.1 ¶¶ 269-270.

### ii.    *Surveillance videos are not admissible.*

Likewise, the purported surveillance video recordings are inadmissible. In *Leo v. Long Island R.R.*, the Court rejected the Defendants' efforts at trial to submit a video recording of Plaintiff without any testimonial support or authentication, and later rejected their request for a new trial on that basis. *Leo v. Long Island R.R.*, 307 F.R.D. 314, 323-324, 2015 U.S. Dist. LEXIS 56953, *26 (S.D.N.Y. April 30, 2015).  "Because of the particular characteristics of pictographic exhibits -- which may be less than crystal-clear, may depict objects other than what the proponent contends is portrayed, and (especially with the growth of computer-based technologies for altering the item) may have been altered or manipulated -- the courts have looked to the requirements of Rules 901(b)(1) and (9) as defining the base-level burden for their admission into evidence." *Leo v. Long Island R.R.*, 307 F.R.D. 314, 324, 2015 U.S. Dist. LEXIS 56953, *26-27.

First, the proponent of the evidence must "establish the item's genuineness" which "requires the proponent to 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Id*. citing Fed. R. Evid. 901. The admitting party may meet their *prima facie* burden of demonstrating the item's genuineness by "the testimony of a witness with knowledge or evidence showing that a process or system produces accurate results." *Id*.

(quoting Fed. R. Evid. 901). "For video recordings, like tape recordings, the proponent should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording accurately represented the scene depicted." *Id.* (internal citations omitted). In *Leo,* the Court reasoned that the Defendants' video recording had been properly excluded from evidence and "was in parts blurry and often shot from what appears to have been a considerable distance, leaving it unclear . . . what actions were being portrayed." *Id.* at 326. The film had also been "heavily edited . . . and there was no way – in the absence of testimony by the editor or someone else with personal knowledge – to determine how it had been edited and whether portions supportive of plaintiff's case had been deleted." *Id.* The Court further lamented that the Defendants had provided no evidence of the technology involved and whether such technology lent itself to manipulation "much less whether such manipulation had actually been employed." *Id.* (citing *Accord United States v. Ida*, 1997 U.S. Dist. LEXIS 2997, 1997 WL 122753, *2 (S.D.N.Y. March 18, 1997) ("In view of the strong impact that [video] recorded evidence may have on juries . . . the Second Circuit requires that the government produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings.").

In their Rule 26(a) disclosures Defendants have not identified any witness able to make any of these required showings and Defendants never showed the videos to Plaintiff at his deposition to ask him whether the videos accurately reflected the May 18th encounter. Defendants made this intentional choice for whatever strategic reason even though they deposed Plaintiff for seven hours. Defendants used none of that time to question Plaintiff about their video recordings though they easily could have done so.

In fact, Nan Malebranch has admitted that the videos do not support Defendants' claims that Mr. Campbell bumped Alzate. Pl. 56.1 ¶ 164. According to the Defendants, the videos only

appear to capture certain angles and "there was no side angle that actually showed [Campbell and Alzate] together." Pl. 56.1 ¶ 166 (quoting testimony of Defendants' Security Director James Cahill).

Finally, particularly given the lack of authentication, there is no guarantee that the versions produced were not manipulated or selectively edited. The Defendants have admitted that they chose to withhold their video recordings from Mr. Campbell during the GFT because according to Defendants the videos are FedEx property. Pl. 56.1 ¶¶ 286-289. Defendants also refused to provide their videos to Plaintiff during the EEOC proceeding. Pl. 56.1 ¶¶ 290. They only produced them in litigation, without naming a witness to authenticate them, and without asking any relevant witness depicted whether the videos truly and accurately depicted anything. Given the Defendants' state of mind regarding the videos there is no guarantee that they have not been manipulated or edited in the same manner the Defendants have manipulated and edited their narrative between the time of Mr. Campbell's termination and his GFT proceeding.

In sum, Defendants cannot meet their burden of proof to establish a legitimate non-retaliatory reason for the materially adverse action of terminating Mr. Campbell and upholding his termination based on Defendants' post-termination fabricated statements. Defendants have not provided any admissible evidence to demonstrate why it was permissible to terminate Mr. Campbell's employment when Peter Lorenzi (among others) was not terminated for other, supposedly "zero tolerance" conduct, or why Defendants' post-termination allegations against Mr. Campbell are not supported by any admissible evidence. In fact, Defendants' own evidence demonstrates their post-termination allegations are fabrications.[7] As such, Defendants are not able

---

[7] Defendants have attempted to claim that the changes in their allegations are unimportant, but Defendants' allegation changes have been important enough to Defendants for them to fabricate.

to put forth admissible evidence of any defense that the reason for Plaintiff being denied reinstatement was due to the truthfulness of their post-termination allegations.

## II. __NYCHRL:__

### A. DEFENDANTS TREATED MR. CAMPBELL "LESS WELL" BECAUSE OF HIS RACE

Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . . [for] an employer or an employee or agent thereof, because of the . . . race . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). The NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114, 2013 U.S. App. LEXIS 8494, *27, 118 Fair Empl. Prac. Cas. (BNA) 238, 96 Empl. Prac. Dec. (CCH) P44,825, 2013 WL 1776643 (2d. Cir. 2013). Instead, "a focus on unequal treatment based on [the protected characteristic]-- regardless of whether the conduct is 'tangible' (like hiring or firing) or not -- is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute." *Id.* (internal citation omitted).

"In evaluating both the plaintiff's claim and the defendant's affirmative defense, courts must consider the totality of the circumstances. The overall context in which the challenged conduct occurs cannot be ignored." *Mihalik* at 111. (internal citations and quotation marks omitted).

"[A] plaintiff must prove that unlawful discrimination was one of the motivating factors of the complained-of conduct." *Reichman v. City of New York*, 179 A.D.3d 1115, 1117, 117 N.Y.S.3d 280, 284-285, 2020 N.Y. App. Div. LEXIS 595, *4, 2020 NY Slip Op 00631, 2, 2020 WL 465159 (2d Dept. Jan 29, 2020). "Under the NYCHRL, a plaintiff claiming a hostile work environment

need only demonstrate that he or she was treated less well than other employees because of the relevant characteristic." *Mihalik* at 110.

"In a hostile work environment claim under the NYCHRL, even a single comment may be actionable in appropriate circumstances." *Gorokhovsky v. N.Y.C. Housing Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (summary order) (quoting *Mihalik*, 715 F.3d at 114) (internal quotation marks omitted); *see also Hernandez v. Kaisman*, 103 A.D.3d 106, 115, 957 N.Y.S.2d 53, 59, 2012 N.Y. App. Div. LEXIS 9069, *15-16, 2012 NY Slip Op 9191, 6-7 (whether a comment is "isolated" is "irrelevant" under the NYCHRL since "the comments and emails objectifying women's bodies and exposing them to sexual ridicule, even if considered 'isolated,' clearly signaled that defendant considered it appropriate to foster an office environment that degraded women.").

"The mere fact that [different members of a protected class] are both exposed to the same offensive circumstances on the job site . . . does not mean that, as a matter of law, their work conditions are equally harsh." *Mihalik*, 715 F.3d at 113.

In *Mihalik*, Second Circuit reversed the District Court's dismissal of Plaintiff's NYCHRL claims where it found that the Court had placed "too much emphasis on *Williams'* recognition that the NYCHRL should not operate as a general civility code, and too little emphasis on its exhortation that even a single comment may be actionable under appropriate circumstances." *Mihalik* at 114 (internal citations and quotations omitted).

As noted above in Section I.A., Mr. Campbell's evidence surpasses the standard set out by the Second Circuit in cases like *Zeng v. N.Y. City Hous. Auth.*, 2023 U.S. App. LEXIS 18035, 2023 WL 4553416 (2d. Cir. July 17, 2023) (Second Circuit reversed the District Court's dismissal of the Plaintiff's hostile work environment claims on summary judgment where the District Court failed to credit the Plaintiff's allegations that coworkers and supervisors invaded her personal

space and shouted racial and sexist slurs, forced her to work in unsafe conditions where she was threatened, and improperly limited the Plaintiff's hostile work environment claim to four isolated instances where the Plaintiff had testified that those instances were illustrations of insults that occurred on a more frequent basis. *Id.,* at 14. As also noted in Section I.A. Defendants subjected Mr. Campbell to near-daily racial harassment and discrimination involving veiled threats and physical intimidation. Pl. 56.1 ¶¶ 40-166.

The conduct must exceed "what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Mihalik* at 111. However, "a contention that the behavior was a petty slight or trivial inconvenience constitutes an affirmative defense . . . which should be raised in the defendants' answer . . .". *Sanderson v. Leg Apparel LL*C, 2020 U.S. Dist. LEXIS 234190, *21, 2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) (quoting *Kaplan v. New York City Dep't of Health & Mental Hygiene*, 142 A.D.3d 1050, 38 N.Y.S.3d 563, 565 (2d Dep't 2016). Defendants never raised any affirmative defense in their answer claiming that Plaintiff's allegations amounted to petty slights and trivial inconveniences. *See* Ex. 33, Answer for All Defendants.  Here, Defendants will not be able to meet their burden of establishing that the complained of conduct amounted to nothing more than petty slights or trivial inconveniences because they never pleaded this affirmative defense. Nor will Defendants be able to meet their burden of demonstrating that discrimination played no role in Plaintiff's termination because they have no admissible evidence to support their version of events.

### B.  DEFENDANTS' RETALIATION AGAINST MR. CAMPBELL

Section 8-107(7) of the NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any

practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7).[8] "Thus, to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik* at 112 (internal citations omitted). The New York Court of Appeals has held "oppos[ing] any practice" can include situations where a person, before the retaliatory conduct occurred, merely "made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought [his] treatment of [the victim] was wrong." *Mihalik, Id.,* quoting *Albunio*, 16 N.Y.3d at at 479. As outlined in Section I.C. above, Mr. Campbell opposed Defendants' discrimination on multiple occasions and Defendants engaged in conduct that is reasonably likely to deter a person from engaging in such action. Because Mr. Campbell meets the standard for retaliation under Title VII, he surpasses the standard under the more liberal NYCHRL.

## C. DEFENDANTS CANNOT REBUT THE PRESUMPTION

As set forth in Section I.D. above, Defendants cannot offer any evidence to demonstrate a legitimate non-retaliatory justification for failing to keep Mr. Campbell's complaints of discrimination confidential, terminating him, and fabricating allegations against him after he was terminated and filed his GFT.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court grant summary judgment in his favor on all claims under Title VII, the NYSHRL, and the NYCHRL.

---

[8] Neither the NYCHRL nor the NYSHRL require either materially adverse employment actions or severe and pervasive conduct. *See Mihalik*, 715 F.3d at 114. Regardless, termination is an adverse action under any standard. *Arazi v. Cohen Bros. Realty Corp.*, 2022 U.S. Dist. LEXIS 56549, *47-48, 2022 WL 912940.

Dated:  New York, New York
        September 13, 2024

                        Massimi Law PLLC

                        *Jessica Massimi*
        By:     _____
                        Jessica Massimi
                        *Attorney for Plaintiff Kevin Campbell*
                        99 Wall Street, Suite 1264
                        NY, NY 10005


                        Cohen and Green PLLC


        By:     /s_____
                        Remy Green
                        *Attorney for Plaintiff Kevin*
                        *Campbell* 1639 Centre Street, Suite
                        216 Ridgewood, NY 11385
                        Remy@femmelaw.com