# EXHIBIT 37
# DEFENDANTS' EEOC POSITION STATEMENT

Legal Department<br>3620 Hacks Cross Road<br>Building B, 3rd Floor<br>Memphis, TN 38125



February 17, 2022

**VIA PORTAL UPLOAD**
Debra Richards
U.S. EEOC - New York District Office
33 Whitehall Street, 5th Floor
New York, NY 1004

    Re: *Kevin Campbell v. Federal Express Corporation*
       EEOC Charge No. 520-2021-03608
       FedEx Matter No. 263671

Dear Investigator Richards:

  Respondent Federal Express Corporation[1] ("FedEx" or the "Company") submits this position statement with respect to the above-referenced charge of discrimination filed by Kevin Campbell ("Campbell").[2] This position statement is submitted in strict confidence, with the expectation that it will be protected to the extent permitted and required by applicable laws and regulations, including 29 C.F.R. §§ 1601.22 and 1601.26.

  It is subject to any and all privileges and confidences that may apply under federal and state law. FedEx's acknowledgment of the charge and its cooperation with the investigation should not be construed as a waiver of any objections or defenses that FedEx may otherwise have to the sufficiency or timeliness of the charge. Further, it is submitted without prejudice to additional legal arguments or defenses that FedEx may advance at any subsequent stage of the proceedings.

**I.**  **INTRODUCTION**

  Campbell alleges FedEx discriminated and retaliated against him because of his race (Black) and that he experienced a racially hostile work environment. There is no evidence to support Campbell's claims, and they fail because FedEx did not discriminate or retaliate against him. **FedEx terminated Campbell's employment only because he engaged in disruptive behavior when he was an active participant in a verbal and physical altercation with another**

---

[1] Federal Express Corporation is also known as FedEx Express.

[2] FedEx reserves the right to amend, supplement, or modify this position statement, if and as appropriate. Nothing included in or excluded from this position statement should be considered a waiver of any rights or defenses of FedEx. FedEx will not produce documents protected by the attorney-client privilege or attorney work product. Only non-privileged documents are produced, which is not intended as a waiver of attorney-client privilege or attorney work product as to any protected documents.

**employee in violation of the acceptable conduct policy**. During FedEx's investigation, Campbell did not deny escalating the situation and admitted he could have acted differently. Moreover, FedEx terminated the other employee (Hispanic) involved in the altercation. For these reasons, the Commission should dismiss the charge.

## II.     FEDEX AND ITS RELEVANT POLICIES

FedEx provides customers and businesses worldwide with a broad portfolio of transportation, e-commerce, and business services. FedEx ships time-sensitive documents and materials to businesses and homes. It is an equal opportunity employer and is fully committed to a policy of non-discrimination/harassment. (**Attachment A**). It also maintains an anti-harassment policy which states that "[i]nappropriate behavior and harassment is not tolerated and may result in discipline up to and including discharge." (**Attachment B**).

As part of its ongoing commitment to maintaining a workplace free of discrimination, FedEx maintains internal procedures that instruct employees to report claims of discrimination, harassment, and/or retaliation to members of management or the Human Resources department. (**Attachments C, D**). The Guaranteed Fair Treatment Procedure (GFTP) is FedEx's multi-level management review procedure employees can use to address various types of concerns. The Internal EEO (IEEO) process is an internal procedure for handling allegations of employment discrimination and harassment. This process may result in corrective action to address actions inconsistent with FedEx's best practices and policies even if the allegations of discrimination or harassment are unfounded.

FedEx also has an acceptable conduct policy which provides its employees with specific guidance on FedEx's workplace standards and misconduct that can lead to discipline and/or termination. (**Attachment E**). The acceptable conduct policy states that "[d]isruptive conduct, including fighting, while on duty or while on FedEx Express property" may result in severe disciplinary action, up to and including termination. *Id*. It also states that management may issue an Online Compliment/Counseling ("OLCC") to counsel the employee about acceptable conduct or a warning letter as discipline for the policy violation. *Id*. An OLCC entry is not disciplinary in nature but may be a factor in determining discipline or when reviewing an employee's work history to identify patterns of conduct, performance issues, or recurrent problems. *Id*. Warning letters serve as a notification of behavioral deficiency and are active for twelve months from the date of issuance. *Id*. Because FedEx does not tolerate recurrent patterns of misconduct, the receipt of three notifications of deficiency within a 12-month period normally results in termination.

These employment policies and procedures are in the FedEx Express (USA) Personnel Policy and Procedure Manual (People Manual) and GO Express: Station and On-Road Policies & Procedures, both of which are accessible to all employees via the FedEx intranet. These manuals provide guidance for both management and employees and are designed so FedEx policies and procedures are easy to locate and understand. Campbell acknowledged receipt of these policies. (**Attachment F**).

*Kevin Campbell v. Federal Express Corporation*
EEOC Charge No. 520-2021-03608
FedEx File No. 263671
Page 3

## III. FEDEX'S RESPONSE TO CAMPBELL'S ALLEGATIONS

### A. Campbell's Employment

Campbell began working as a full-time courier non-driver at the LGA Station in Maspeth, New York on April 2, 2017. (**Attachment G**). FedEx created this position for him because he did not have a license.[3] In this position, Campbell delivered packages alongside another courier who drove the delivery truck. The driving courier would drop Campbell off at one location to deliver to multiple businesses at that location while the driver made deliveries in nearby areas in the truck.

From April 2, 2017 to June 15, 2020, Henry Nunez (Hispanic) was Campbell's manager. Monty Bovell (Black) became Campbell's manager on June 16, 2020 and remained his manager until Campbell's termination on May 25, 2021. Frank Ontaneda (Hispanic), Michael Bradley (White), Steven Pasqualicchio (White), and Robert Mejia (Hispanic) were LGA Station managers. Eric Warnders (White) was the LGA Station senior manager.

### B. Campbell Made Only One Complaint During His Employment.

During Campbell's employment, Campbell complained only once of race discrimination. He did not complain any manager treated him unfairly including that Nunez[4] cut his hours[5] and made a racist statement or that Bradley reprimanded and disciplined him. Warnders denies Campbell complained to him about Nunez or any other manager. Further, Campbell consistently worked over 35 hours each week, and Bradley never issued Campbell any disciplinary actions, including any OLCCs. Campbell also did not complain of harassment, retaliation, or that employees referred to him as a "snitch," gave him broken equipment, ignored him, and made race-based comments, including comments relating to riots, cages, criminals, and cars.

Instead, Campbell only complained about another co-worker, Peter Lorenzi. On June 1, 2020, Campbell reported that Lorenzi made insensitive references. Contrary to the charge allegations, no one, including Frank Ontaneda, told Campbell, "Let's not escalate this. Let's just talk to Peter and figure it out." Rather, FedEx immediately investigated the incident and quickly placed Lorenzi on investigative suspension. Pursuant to its policies, FedEx kept Campbell's

---

[3] The fact that FedEx created a position for Campbell undermines his discrimination and retaliation claims. It makes no sense that FedEx would create a position for Campbell only to discriminate and retaliate against him.

[4] Besides being meritless, Campbell's allegations regarding Nunez are time-barred and cannot form the basis of any discrimination claim. Campbell did not file the charge until August 31, 2021, well more than 300 days after any of the complained of behavior involving Nunez allegedly occurred in 2018.

[5] Notably, in the charge Campbell does not allege Nunez cut his hours because of his race. Instead, he implies that Nunez <u>also cut other employees' hours</u>, and employees could not complete their work within their limited number of hours.

complaint and the ensuing investigation confidential. The investigation substantiated that Lorenzi called Campbell Trayvon Martin two or three times and asked Campbell about not having hot or running water in the projects. Consequently, on June 3, 2020, Ontaneda issued Lorenzi a warning letter along with an unpaid 5-day suspension. (**Attachment H**). The fact that FedEx disciplined Lorenzi only two days after Campbell made his complaint shows FedEx took Campbell's complaint seriously and did more than just "talk to Peter and figure it out."

### C. Campbell's Altercation and Violation of the Acceptable Conduct Policy.

On May 18, 2021, Campbell and handler Augusto Alzate (Hispanic) engaged in a disruptive verbal altercation that quickly escalated to a physical confrontation. During the AM sort, Alzate pushed several packages on the belt towards Campbell's direction. In response, Campbell aggressively turned towards Alzate and intentionally bumped him with his shoulder. The two men cursed at each other, and Alzate removed a box cutter from his utility pouch and waved it at Campbell. Campbell and Alzate struggled for control of the box cutter until several employees intervened and physically separated them. FedEx immediately placed both Alzate and Campbell on an investigative suspension with pay to investigate their possible violation of the acceptable conduct policy. (**Attachment I**).

Campbell's version of his altercation with Alzate is misleading, and his description in the charge of his actions is not as innocuous as he portrays them to be. FedEx security investigated the incident by conducting interviews with Alzate and Campbell, speaking to witnesses, and reviewing video footage. During his interview, Campbell admitted to stepping towards Alzate and confronting him in an intimidating manner. Although he denied making any physical contact with Alzate, witnesses confirmed Campbell intentionally hit Alzate with his shoulder. Further, the video footage showed Campbell antagonistically approached Alzate and made physical contact with Alzate in the chest area.

FedEx's investigation substantiated that both men engaged in disruptive conduct in violation of the acceptable conduct policy. Thus, FedEx terminated **both** Campbell and Alzate for engaging in disruptive behavior in violation of the acceptable conduct policy. (**Attachments J, K**). As noted in the acceptable conduct policy, FedEx does not tolerate violent or threatening behavior in the workplace. (**Attachment E**). Disruptive conduct, including fighting, using violent or intimidating language, or engaging in violent, threatening, or intimidating behavior, are all grounds for termination. *Id*. The fact that FedEx terminated both Campbell and Alzate for the same reason disproves any notion that FedEx terminated Campbell because of his race or in retaliation for his complaining about Lorenzi.[6] FedEx terminated Campbell on May 25, 2021, and Alzate on May 27, 2021. (**Attachments J, K**).

---

[6] FedEx obviously did not retaliate against Campbell for his complaint against Lorenzi, which Campbell made nearly a year before he engaged in disruptive behavior with Alzate.

### D.     **Campbell's GFTP Complaint**.

On May 26, 2021, Campbell filed a GFTP complaint to challenge his termination. (**Attachment L**). FedEx thoroughly investigated his complaint at all three levels of the GFTP review and determined Campbell's termination was proper. (**Attachment M**). During the Step 1 GFTP meeting, Campbell admitted he could have looked the other way but reacted wrongly and did not walk away to notify management because he wanted management to see Alzate in an angry state.[7] He also admitted that his actions could be considered intimidating. Campbell blamed Alzate for his behavior and, for the first time, claimed Alzate addressed him in an inappropriate way every day. However, according to Bovell, Campbell's manager at the time of his termination, Campbell never complained to him or anyone else about Alzate. In addition, managing director Nanette Malebranche (White) asked Campbell if he spoke to senior management or HR about Alzate, and Complainant answered no.

The managers reviewing Campbell's GFTP complaint concluded management acted in accordance with policy and upheld Campbell's termination. They based their decisions on the findings from the investigation FedEx security conducted, witness statements confirming Campbell intentionally hit Alzate with his shoulder, and Campbell's admission that he acted wrongly during the incident, which escalated a verbal argument to a physical confrontation. There was no doubt that Campbell engaged in and was responsible for a verbal and physical altercation with another employee resulting in a disruption to the AM sort and requiring other employees to stop working to intervene. Campbell's conduct violated the acceptable conduct policy, and his termination was consistent FedEx policy and practices.

### E.     **Campbell's IEEO Complaint**

In his Step 1 GFTP complaint, Campbell raised allegations of discrimination that he never mentioned before during his employment. Accordingly, HR Advisor Lance Reyes (Black) provided Campbell with IEEO paperwork, and FedEx investigated Campbell's IEEO complaint. (**Attachments N, O**). The allegations Campbell raised are the same allegations he makes in his charge. He claimed an employee made a comment to him about stealing a television while rioting, another employee asked Bradley and Pasqualicchio if Campbell "look[s] like a person who would steal your radio and try to sell it to you," and two employees called Campbell a gorilla in a cage because he was helping out in the DEX cage. He never reported these comments to anyone during his employment, and FedEx only learned of them after Campbell's termination. Nonetheless, FedEx's investigation could not substantiate Campbell's new allegations, and the individuals Campbell identified as witnesses, including Nunez, Bradley, and Pasqualicchio, denied the allegations occurred.

---

[7] FedEx obviously did not manufacture a pretextual reason for Campbell's termination to hide discrimination given Campbell's admission that he intentionally acted because he wanted management to see Alzate in an angry state.

*Kevin Campbell v. Federal Express Corporation*
EEOC Charge No. 520-2021-03608
FedEx File No. 263671
Page 6

## IV.  CONCLUSION

As detailed above, Campbell fails to establish claims for discrimination, retaliation, or hostile work environment.  FedEx respectfully requests that the agency dismiss the charge and issue a "no cause" determination.  All relevant documents are attached.

Respectfully submitted,

**FEDEX LEGAL DEPARTMENT**

*Gabriel McGaha*
_____
Gabriel McGaha - Sr. Attorney, Litigation
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Fl
Memphis, TN 38125
gabriel.mcgaha@fedex.com

Attachments

### Attachments

*Kevin Campbell v. Federal Express Corporation*
EEOC Charge No. 520-2021-03608
FedEx File No. 263671

| | |
|---|---|
| Attachment A | 4-55 Equal Employment Opportunity/Affirmative Action |
| Attachment B | 5-55 Anti-Harassment |
| Attachment C | 5-5 Guaranteed Fair Treatment Procedure |
| Attachment D | 5-6 Internal EEO Complaint Process |
| Attachment E | 2-5 Acceptable Conduct |
| Attachment F | Campbell Handbook Acknowledgment |
| Attachment G | Offer Letter |
| Attachment H | **CONFIDENTIAL ATTACHMENT** - Peter Lorenzi Warning Letter |
| Attachment I | May 18, 2021 Investigative Suspension Letter |
| Attachment J | Campbell Termination Letter |
| Attachment K | **CONFIDENTIAL ATTACHMENT** - Augusto Alzate Termination Letter |
| Attachment L | Campbell GFTP Complaints |
| Attachment M | Campbell GFTP Responses |
| Attachment N | July 26, 2021 Notification of IEEO Investigation Letter |
| Attachment O | November 23, 2021 IEEO Closure Letter |