UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X    22 CV 7662 (DLI)(MMH)

KEVIN CAMPBELL,

                                 Plaintiff,

               -against-

FEDERAL EXPRESS CORPORATION A/K/A FEDEX
EXPRESS, AND ERIC WARNDERS, *INDIVIDUALLY*,

                            Defendants.

-------------------------------------------------------------------------X

Oral Argument Requested

**PLAINTIFF'S REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF
PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

Jessica Massimi
**Massimi Law PLLC**
*Attorney for Plaintiff Kevin Campbell*
99 Wall Street, Suite 1264
NY, NY 10005
Jessica.Massimi@gmail.com


Remy Green
**Cᴏʜᴇɴ&Gʀᴇᴇɴ P.L.L.C.**
*Attorney for Plaintiff Kevin Campbell*
1639 Centre Street, Suite 216
Ridgewood, NY 11385
Remy@femmelaw.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

    A.1.a. Title VII and NYSHRL: Inference of Discrimination.. ........................................ 1

    A.1.b. Defendants Lack a Legitimate Non-Discriminatory Reason ................................ 3

    A.2. Mr. Campbell's NYCHRL Claim must Proceed .................................................. 6

    B. 1. Title VII: Mr. Campbell Has Proven Hostile Work Environment ....................... 7

    B.1.a. Defendants' Employee's Racist Statements are Admissible ............................... 8

    B.1.b. Defendants Improperly Cite Plaintiff's Complaint ............................................ 10

    B. 2. Plaintiff's NYCHRL and NYSHRL Hostile Work Environment Claims Prevail ................. 11

    C. 1. a. Mr. Campbell's Title VII Retaliation Claim Must Proceed. ............................. 13

    C. 1. b. Mr. Campbell Has Established a Causal Connection. ........................................ 14

    C. 2. Mr. Campbell's NYCHRL and NYSHRL Retaliation Claims Must Proceed ........................ 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 1999 U.S. App. LEXIS 25003, 15 I.E.R. Cas. (BNA) 1119, 53 Fed. R. Evid. Serv. (Callaghan) 219 (2d Cir. Oct. 7, 1999) ..... 8

*Bart v. Golub Corp.*, 96 F.4th 566, 575, 2024 U.S. App. LEXIS 7107 (2d Cir., March 26, 2024) 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............... 10

*Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522 (S.D.N.Y. 2001) ............ 12

*Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119 (2d Cir. 2012) .............................. 6

*Cadet v. Deutsche Bank Sec., Inc*., No. 11-cv-7964 (CM), 2013 WL 3090690 (S.D.N.Y. June 18, 2013) ........................................................................................................................................ 12

*Cano v. SEIU Local 32BJ*, 19-CV-8810 (PAE) (KHP), 2023 WL 4830091(S.D.N.Y. April 17, 2023) ........................................................................................................................................... 9

*Conn. v. Teal*, 457 U.S. 440 (1982) .......................................................................................... 2,3

*Danzer v. Norden Sys.*, 151 F.3d 50 (2d Cir. 1998) ...................................................................... 3

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ......................................................... 10

*Gutierrez v. Skyview Car Wash., Inc.*, 2024 U.S. Dist. LEXIS 56822, 2024 WL 1332632 (E.D.N.Y. March 28, 2024) ....................................................................................................................... 6

*Holt v. DynaServ Indus.*, 2016 U.S. Dist. LEXIS 127750, 2016 WL 4734661 (S.D.N.Y. Sept. 19, 2016) ........................................................................................................................................ 13

*Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69, 2001 U.S. App. LEXIS 15480 (2d Cir. July 10, 2001) ........................................................................................................................................ 12

ii

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000) ............................................................ 6

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345 (S.D.N.Y. 2007) ............................................................................................................................................ 11

*Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502 (S.D.N.Y. 2010)........................................ 11

*Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 2013 U.S. App. LEXIS 24838 (2d Cir., December 16, 2013) .......................................................................................................................................... 4

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir.2012) ................................................................ 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 2013 U.S. App. LEXIS 8494 (2d. Cir. 2013)........................................................................................................................ 12, 15

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)........................................................... 3

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) ..................................................................... 3

*Ramos v. City of New York*, No. 96 Civ. 3787 (DLC), 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493 (S.D.N.Y. July 22, 1997) ........................................................................................... 11

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014) .......................... 14

*Ruiz v. SEIU Loc. 32BJ*, 2023 U.S. Dist. LEXIS 132992 (S.D.N.Y April 17, 2023).................... 9

*Sanderson v. Leg Apparel, LLC,* No. 1:19-cv-8423-GHW2020, WL 7342742 (S.D.N.Y. Dec. 14, 2020) ........................................................................................................................................ 11

*Starzynski v. Stanely Black & Decker, Inc.,* 2022 U.S. App. LEXIS 35262 (2d. Cir. Dec. 21, 2022) ............................................................................................................................................... 14

*State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 487 N.E.2d 268, 496 N.Y.S.2d 411 (N.Y. 1985) ....................................................................................... 13

*Trustees of Forbes Library v. Labor Relations Com.*, 428 N.E.2d 124, 130, 384 Mass. 559 (1981) ................................................................................................................................................ 2

*Weaver v. Bloomberg L.P.*, 717 F. Supp. 3d 372, 2024 U.S. Dist. LEXIS 28750, *33 (S.D.N.Y. Feb. 20, 2024) ................................................................................................................... 9

*Wenderlich*, 2016 U.S. Dist. LEXIS 120818 (W.D.N.Y. 2016) ................................................. 10

*Williams v. New York City Hous. Auth.,*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 2009 N.Y. App. Div. LEXIS 433, 2009 NY Slip Op 440, 5, 105 Fair Empl. Prac. Cas. (BNA) 1059 (1st Dep't 2009) ................................................................................................................................................. 15

*Wise v. New York City Police Dep't*, 928 F. Supp. 355, 1996 U.S. Dist. LEXIS 8242 (S.D.N.Y. June 12, 1996) ........................................................................................................................... 2

*Zeng v. N.Y. City Hous. Auth.*, 2023 U.S. App. LEXIS 18035, 2023 WL 4553416 (2d. Cir. July 17, 2023) ..................................................................................................................................... 12

**Statutes**

Fed. R. Evid. 801(c) ..................................................................................................................... 8

# **ARGUMENT**[1]

**A.1.a. Title VII and NYSHRL: Inference of Discrimination.**[2],[3] As set forth in Section I.B. of Plaintiff's Memorandum of Law In Support of Plaintiff's Motion for Summary Judgment ("Pl. MOL"), Mr. Campbell's termination occurred under circumstances giving rise to an inference of discrimination. In Defendants' Memorandum of Law ("Def. MOL"), they do not distinguish any cases cited by Plaintiff in this section. Mr. Campbell easily surpasses this standard. Defendants engaged in ongoing racial harassment against Mr. Campbell by way of explicit racially degrading language and physical threats such following him around the station while referring to him as a dead Black teenager. *See for example* Pl. 56.1 ¶¶ 40-166.[4] Defendants also applied their disciplinary policies less severely to non-Black employees such as Peter Lorenzi, who received a mere suspension rather than a termination, Pl. 56.1 ¶¶ 178-182 and other managers such as Henry Nunez who is also still employed by Defendants. Peter Lorenzi was allowed to keep his job despite the fact that he was found to be in violation of Policy 2-5 (Acceptable Conduct), the same policy

---

[1] Due to the 15-page limit for Plaintiff's combined opposition and reply, Plaintiff respectfully incorporates his statement of facts from his memorandum of law, Plaintiff's 56.1, and Plaintiff's 56.1 Response. For the same reason, Plaintiff also respectfully incorporates herein all arguments and case law set forth in his MOL. Defendants attempt to circumvent the court's page limit requirements by including numerous legal arguments in their 56.1 which they omit from their memorandum of law, thereby depriving Plaintiff of the opportunity to respond. *See* Second Declaration of Jessica Massimi and attached chart. The Court should disregard Defendants' legal arguments which they omit from their memorandum of law. Additionally, in their memorandum of law, Defendants fail to oppose the following arguments made in Plaintiff's MOL: (1) Peter Lorenzi who is not Black was treated more favorably after engaging in the same policy violation for which Plaintiff was ultimately (wrongly) terminated, (2) Defendants' videos are inadmissible, (3) Jose Moreno's statements are inadmissible, and (4) Defendants never raised an affirmative defense of "petty sleights and trivial inconveniences." As such Plaintiff's arguments on these points should be granted as unopposed.

[2] Defendants do not cite any case law in Section A.1.a. of their Memorandum of Law ("Def. MOL") where they argue this point.

[3] Plaintiff's headings herein mirror those in Defendants' Memorandum of Law.

[4] In their 56.1 response, Defendants dispute several paragraphs citing evidence which supports Plaintiff's assertions. Not all are listed here, but Defendants' response to Pl. 56.1 ¶80 is an example. Defendants cite to Ex. M for their assertion that Lorenzi did not follow Mr. Campbell, but Exhibit M confirms Lorenzi did. This is significant since it makes clear that Lorenzi's racial harassment of Campbell involved a physical intimidation component, and Lorenzi was not terminated.

for which Mr. Campbell was terminated for allegedly violating, *Id.,* and despite the fact that his harassment of Plaintiff involved physical threats and actions such as following him around while referring to him as "Trayvon Martin." Compare with Pl. 56.1 ¶¶ 112-166. Mr. Campbell complained of the discrimination multiple times, or managers were otherwise aware of it and did nothing in violation of their policies. Pl. 56.1 ¶¶ 89, 91-92, 98, 167-184. Defendants believe all of this behavior, including Mr. Alzate hitting Mr. Campbell with a box, is acceptable. Pl. 56.1 ¶¶ 185-207.

Defendants also cannot prevail by arguing that other bad actors were the same race as Plaintiff. Defendants' discrimination need not follow a consistent pattern to be actionable. "It is clear beyond cavil that the obligation imposed by Title VII is to provide an equal opporunity for *each* applicant regarlless of race, withoug regard to whether members of the applicant's race are already proportionately represented in the work force. It is clear that congress never intended to give an employer license to discriminate against some employees on the basis of race. . . merely because he favorably treats other members of the employee's group." *Conn. v. Teal*, 457 U.S. 440 (1982)(emphasis in original).

A supervisory officer may be held liable for failing to intervene to stop the discriminatory conduct of others if the supervisor "had actual or constructive knowledge of gender-discriminatory policies and that he permitted such conduct to continue, or was grossly negligent in his management of subordinates who promoted such conduct." *Wise v. New York City Police Dep't*, 928 F. Supp. 355, 368, 1996 U.S. Dist. LEXIS 8242, *30 (S.D.N.Y. June 12, 1996); *see also Trustees of Forbes Library v. Labor Relations Com.*, 428 N.E.2d 124, 130, 384 Mass. 559, 570 (1981) ("An employer should not be permitted to insulate its decision by interposing an intermediate level of persons in the hierarchy of decision, and asserting that the ultimate decision

2

makers acted only on recommendation, without personal hostility toward protected activity.")

"The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable." *Danzer v. Norden Sys.*, 151 F.3d 50, 55 (2d Cir. 1998). "Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998).

As for Defendants' assertion that an employee outside of Plaintiff's protected group was terminated, Mr. Alzate undisputedly engaged in violence and dishonesty not alleged against Mr. Campbell. Mr. Alzate engaged in violent conduct by approaching Mr. Campbell unprovoked, in a clearly agitated state flailing his arms and pushing several boxes in Campbell's direction, hitting him with a box (Pl. 56.1 ¶¶ 119, 126, 127); wielded a box cutter at Mr. Campbell (Pl. 56.1 ¶¶ 123); and lied to Defendants. (Pl. 56.1 ¶159). In any event, it is clearly established that fairness to other employees (i.e. Defendants justifiably terminating Mr. Alzate for violence he actually committed) does not justify unfairness to other individuals even in the same protected class since "the statute's focus on the individual is unambiguous." *Conn. v. Teal*, 457 U.S. 440, 455 (1982); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) ("The mere fact that men and women are both exposed to the same offensive circumstances on the job site . . . does not mean that, as a matter of law, their work conditions are equally harsh."). Thus, Defendants' argument on this point – like their arguments regarding "diversity" – is a red herring.

**A.1.b. Defendants Lack a Legitimate Non-Discriminatory Reason.**[5] The fact is "a Title VII Plaintiff need not prove the employer's stated reason was *false*. A plaintiff instead need only

---

[5] Defendants do not cite any case law in Section A.1.b. of their Memorandum of Law ("Def. MOL") where they argue this point

show that the employer's stated reason—even if true or factually accurate—was not the real reason, in the sense that it was not the *entire* reason due to a coexisting impermissible consideration." *Bart v. Golub Corp.*, 96 F.4th 566, 575, 2024 U.S. App. LEXIS 7107, *22-24 (2d Cir., March 26, 2024) (emphasis in original) (citations omitted). In *Bart*, the Second Circuit further explained that it uses "pretext as shorthand" but the "more complete characterization of a plaintiff's third-stage burden in mixed-motives cases is to produce admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.* (citations and quotation marks omitted).

In the context of retaliation,[6] Mr. Campbell "may prove that [it] was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846, 2013 U.S. App. LEXIS 24838, *26-29 (2d Cir., December 16, 2013). Such evidence must also be considered here where Plaintiff's burden is not as high as demonstrating a "but for cause" but only that the discriminatory motivation played a role in the decision to terminate.

The Defendants' stated key evidence justifying Mr. Campbell's termination is fabricated as evidenced by Defendants' inconsistent statements about that alleged evidence, and therefore lends support to Mr. Campbell's claims that discrimination was the but-for cause for his

---

[6] Defendants' incorrectly claim in their MOL that Plaintiff's retaliation claims are limited to his pre-termination complaints of discrimination. *See* Defs'. MOL, p. 1. Not so. As Defendants have been aware throughout the course of this litigation, they are also accused of retaliation by constructing a knowingly false narrative during Plaintiff's post-termination grievance proceeding that Mr. Campbell was aggressive and "bumped" Alzate despite (undisputedly) subjectively finding Mr. Alzate not credible. *See* ECF No. 43, p. 2; Pl. MOL p. 3, 6, 15, 21, 22; ECF No. 37-1 (Defendants stipulating that "Defendants will not argue that Plaintiff has not adequately alleged that he was discriminated and retaliated against at the GFT stage.").

termination. Defendants told the EEOC that "the video footage showed Campbell . . . made physical contact with Alzate in the chest area." Ex. 37, Defendants' EEOC Position Statement, p. 4. Yet, according to the Defendants, the security videos do not show Mr. Campbell making physical contact with Mr. Alzate. Ex. 3, Malebranche Tr. 75:15-17, 122:16-18.

Defendants now claim in their motion that Mr. Campbell was terminated for engaging in "disruptive behavior." Def. MOL at p. 9. That is, far less offensive behavior than Lorenzi's racism – for which FedEx claims to have a zero-tolerance policy – where he was merely suspended for five days and allowed to keep his job. Pl. 56.1 ¶¶ 178-181. To be clear, Defendants claim that Mr. Campbell violated the exact same provision as Peter Lorenzi: FedEx2-5 (Acceptable Conduct). Pl. 56.1 ¶179. Defendants' motion is an attempt to scale back their past fabrications regarding Mr. Campbell. Here, Defendants acknowledge that "FedEx's investigation determined that Alzate initiated the altercation on May 18." Def. Mot., p. 9. But this is not what Defendants have said in the past to justify Mr. Campbell's termination.

On June 1, 2021, following Mr. Campbell's GFT document submission where he accused Defendants of discrimination, and in preparation for the GFT Step I meeting, Eric Warnders sent an email to Nan Malebranche (the "June 1st Email") referring her to the attached video and stills, telling Ms. Malebranche "As you can see there was initial contact on Kevin's part." Ex. 3, Malebranche Tr. 114:21-115:15; Ex. 23, June 1, 2021 Email from Eric Warnders to Nan Malebranche ("June 1st Warnders Email") ESI0000481. *See* Pl. 56.1 at ¶248.

In the June 10th Letter, Ms. Malebranche now accused Mr. Campbell of "trigger[]ing the physical altercation." Ex. 25, June 10th Letter, FEC 0736. *See* Pl. 56.1 at ¶271. In that same letter, Ms. Malebranche also assigned responsibility for the altercation to Mr. Campbell, now stating that "A close look at the actions that led to the altercation, as well as the statements from witnesses,

indicates your responsibility for *inciting* the other employee." Ex. 25, June 10th Letter, FEC 0736. *See* Pl. 56.1 at ¶272 (emphasis added).

On August 10, 2021, Defendant Warnders sent an email to FedEx Executive Ops Administrator Stephanie Reycraw as part of the Step II GFT process informing Ms. Rycraw that Mr. Campbell's "aggressive actions incited the physical altercation." Ex. 27, August 10, 2021 Email from Defendant Warnders to Stephanie Rycraw ("August 10th Email"), ESI0000485-ESI0000488. *See* Pl. 56.1 at ¶273.

Finally, Defendants' assertion that Plaintiff acknowledged Alzate could have been intimidated is not admissible, as it is speculation and misstates Plaintiff's testimony. *See* Plaintiff's Response to Defendants' 56.1 at ¶79. *Gutierrez v. Skyview Car Wash., Inc.*, 2024 U.S. Dist. LEXIS 56822, *4, 2024 WL 1332632 (E.D.N.Y. March 28, 2024) ("The Court also does not give any consideration to . . . speculation . . .").[7]

In order to rebut the presumption of discriminatory motivation, Defendants must show more than immaterial speculation to support Plaintiff's termination; the employer must present "admissible evidence of a legitimate nondiscriminatory reason for its adverse employment decision." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000). The reason must be "legitimate," "nondiscriminatory," "clear," and "specific." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 132 (2d Cir. 2012). Defendants do not have this.

**A.2. Mr. Campbell's NYCHRL Claim must Proceed.** For the reasons set forth herein above and in Section II of Plaintiff's Memorandum of Law In Support of His Motion for Summary Judgment, Defendants' motion regarding Plaintiff's NYCHRL claims should be denied. Notably,

---

[7] This line of questioning was properly met with a non-speaking, substantive objection. No employee has ever accused Mr. Campbell of engaging in aggressive or intimidating behavior. This is something the Defendants fabricated out of whole cloth for their own improper discriminatory purposes.

Defendants incorrectly claim that "Campbell has not specifically identified an employee with whom he seeks to compare himself" for purposes of establishing discrimination. This is plainly false. Peter Lorenzi is Hispanic or white (undisputedly not Black) and is the employee who followed Mr. Campbell while referring to him as "Trayvon Martin." Pl. 56.1 ¶¶ 78-82. Mr. Lorenzi was only suspended from work for 5 days and but found to violate Policy 2-5 (Acceptable Conduct), the same policy for which Mr. Campbell was terminated for allegedly violating. Pl. 56.1 ¶¶ 178-181. Even though FedEx claims to have a zero-tolerance policy for discrimination, Pl. 56.1 ¶¶ 360-366, 396, Defendants chose to give Mr. Lorenzi the benefit of their progressive discipline procedures and merely place him on suspension rather than terminating him, notwithstanding his blatant racism and physical harassment of Mr. Campbell. *See* Pl. 56.1 ¶¶ 397-404 for Defendants' Progressive Discipline Procedures; *see also* Pl. 56.1 ¶¶ 388 (manager Steve Pasqualicchio testifying that findings of racial discrimination do not necessarily result in termination of the offender); *compare* to Defendants' decision to deprive Mr. Campbell of that same progressive discipline. Pl. 56.1 ¶ 135.

**B. 1. Title VII: Mr. Campbell Has Proven Hostile Work Environment.** For the reasons set forth above and in Section I.A. of Plaintiff's Memorandum of Law In Support of His Motion for Summary Judgment, Defendants' motion regarding Plaintiff's Title VII hostile work environment claims should be denied. Defendants incorrectly claim that because FedEx did not keep records of Mr. Campbell's complaints of discrimination, they must conveniently escape liability. Defendants acknowledge that Mr. Campbell complained of Peter Lorenzi's racial harassment and that Defendants did not terminate Mr. Lorenzi. However, Defendants are incorrect when they claim that Plaintiff testified this was a proper resolution. *See* Plaintiff's Response to Defendants' 56.1 ("Pl. 56.1 Response") at ¶ 37. Defendants then cite to Plaintiff's Complaint for

their assertion that Plaintiff never complained about any other incident, but Plaintiff's testimony makes clear he did. Pl. 56.1 ¶¶ 167-184; Pl. 56.1 Response at ¶ 90.

**B.1.a. Defendants' Employee's Racist Statements are Admissible [8], [9].** Defendants' arguments regarding the admissibility of their employee's statements should be denied. As an initial matter, Defendants' employee's statements are not hearsay because they are not "offered in evidence to provide the truth of the matter asserted." Fed. R. Evid. 801(c). For example, in or around July 2020, "JC" and Jeffrey Durante, Plaintiff's co-workers, walked over to Campbell who was standing near a cage where packages are stored. Durante said to Campbell "How about I put you in that cage like the gorilla you are." Ex. 38, Campbell Dec. ¶¶ 21-23; *See also* Ex. 1, Campbell Tr. 209:4-209:13 (Mr. McGaha reading this statement into the record). Clearly, Durante's statement is not true, and is therefore not hearsay. *Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 348, 1999 U.S. App. LEXIS 25003, *17, 15 I.E.R. Cas. (BNA) 1119, 53 Fed. R. Evid. Serv. (Callaghan) 219 (2d Cir. Oct. 7, 1999) ("The witnesses' testimonial reports of the third parties' statements were thus not allowed for the purpose of establishing whether the third parties' comments indicating that Barrett was arrogant, difficult and obstructionist were true. They were admitted to assist the commissioners in seeking to demonstrate that they were motivated by Barrett's behavior and not by his comments on politically sensitive issues. They were therefore not hearsay.") (Citing Fed. R. Evid. 801(c), quoting the definition of hearsay, and emphasizing that hearsay is only such if offered "*to provide the truth of the matter asserted.*")

---

[8] These statements are offered to prove that the managers had notice of racial harassment at FedEx and against Mr. Campbell, and to demonstrate the effect of these statements on Mr. Campbell. Defendants' arguments regarding admissibility should also be denied because Defendants do not lodge any hearsay objection in their 56.1 Statement regarding these racist statements.

[9] Defendants also do not raise hearsay objections to these statements in their 56.1 response.

8

Similarly, all other racist statements such as Rob the Mechanic accusing Mr. Campbell of stealing a TV, David Almeda's comments that Mr. Campbell would steal a car radio, and Peter Lorenzi's statements that Mr. Campbell is Trayvon Martin, lives in the projects and does not have running water, are all false. Mr. Campbell does not assert that the speakers nor FedEx even believed these statements to be true. Since Mr. Campbell does not seek to have these statements admitted for their truth, hearsay does not apply. Defendants cite *Cano v. SEIU Local 32BJ*, 19-CV-8810 (PAE) (KHP), 2023 WL 4830091 at *14 (S.D.N.Y. April 17, 2023) at page 12 of their brief. Plaintiff's counsel has been unable to find this case. It appears Defendants may be attempting to refer to *Ruiz v. SEIU Loc. 32BJ*, 2023 U.S. Dist. LEXIS 132992, *39 (S.D.N.Y April 17, 2023). In any event, this case did not stand – as Defendants claim – for their assertion Defendants' employee's discriminatory statements are inadmissible on a motion for summary judgment. Rather, in *Ruiz* the Court examined whether double-hearsay was admissible and found that that while the alleged underlying discriminatory statement would be admissible as a statement against interest, the second lawyer of hearsay was not. *Id*. at *39-40. Such facts are notably absent here.

As for Defendants' claims that Plaintiff's complaints of discrimination are "self-serving", "at summary judgment [] that issue is necessarily resolved in favor of the non-movant" which here is Plaintiff. *Weaver v. Bloomberg L.P.*, 717 F. Supp. 3d 372, 389, 2024 U.S. Dist. LEXIS 28750, *33 (S.D.N.Y. Feb. 20, 2024). "To hold, as defendants ask us to do, that the nonmovant's allegations of fact are (because "self-serving") insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits. Such a radical change [] would be inappropriate[]." *Id.* "Each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**B.1.b. Defendants Improperly Cite Plaintiff's Complaint.** Each of Defendants' factual allegations they have set forth under Plaintiff's Complaint paragraphs are disputed.[10] At his deposition, Mr. Campbell identified several employees who expressed blatantly racist views. Pl. 56.1 Response ¶31. Campbell reported this discrimination prior to his termination. Pl. 56.1 Response ¶32. Defendants themselves provided testimony supporting Mr. Campbell's claim that they labeled him a snitch. Pl. 56.1 Response ¶38. Defendants claim in their 56.1 that Mr. Campbell never reported being labeled a snitch, but this is disputed. Pl. 56.1 Response ¶39. Mr. Campbell reported "Rob the Mechanic's" stolen TV statements at the time. Pl. 56.1 Response ¶¶43, 46-47. Prior to his termination, Mr. Campbell reported the "Gorilla" comments to the extent he felt safe doing so. Pl. 56.1 Response ¶¶48-49. Immediately following the "car radio" incident Mr. Campbell engaged in protected activity by complaining to managers Pasqualicchio and Bradley, who were present for the incident. Pl. 56.1 Response ¶¶50-53. While Mr. Campbell testified that in hindsight he should have reported to "anyone who wasn't a manager in the station," Pl. 56.1 Response ¶55, the law does not require this. *Misas v. N. Shore-Long Island Jewish Health Sys.*, 2017 U.S. Dist. LEXIS 64379, *20, 2017 WL 1535112 (S.D.N.Y. April 27, 2017) ("no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic"). Nor does the law require Mr. Campbell to have used the word "discrimination" when reporting it. *Krasner v. HSH Nordbank AG*, 680 F.

---

[10] Though this is a motion for summary judgment, at pages 13-14 of their Complaint, Defendants attempt to cabin Defendants' discrimination to Plaintiff's Complaint allegations while ignoring his more detailed deposition testimony. On a motion for summary judgment, the test is not the sufficiency of Plaintiff's pleading. Rather, "a Defendant who files a motion for summary judgment under Rule 56 tests the sufficiency of the plaintiff's evidence." *King v. Wenderlich*, 2016 U.S. Dist. LEXIS 120818 (WDNY 2016). Even if the Court were to assess the Plaintiff's Complaint here, the Court reviewing a motion to dismiss must accept as true all of the factual allegations contained in the Complaint and draw all reasonable inferences in Plaintiff's favor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011), a standard under which Defendants also fail.

Supp. 2d 502, 521 (S.D.N.Y. 2010); *see also, e.g., Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); *Ramos v. City of New York*, No. 96 Civ. 3787 (DLC), 1997 U.S. Dist. LEXIS 10538, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) (an employee need not use any "magic words" to engage in protected activity). Nor does the complained of conduct need to be independently unlawful. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012). Nor does the complaint need to have been formal or in writing. *Summa v. Hofstra Univ.*, 708 F.3d 115, 126, 2013 U.S. App. LEXIS 3677, *22, 117 Fair Empl. Prac. Cas. (BNA) 676, 96 Empl. Prac. Dec. (CCH) P44,808, 2013 WL 627710 (2d Cir. Feb. 21, 2013).

Michael Bradley confronted Mr. Campbell about his complaints against Peter Lorenzi. Pl. 56.1 Response ¶57. In retaliation, Michael Bradley started requiring Mr. Campbell to relabel packages though that was function performed by other workers designated to handle that. Pl. 56.1 Response ¶60. Bradley screamed at Campbell ensuring that there were no witnesses. Pl. 56.1 Response ¶62. Mr. Campbell provided testimony supporting the fact that Defendants and their employees vandalized his car. Pl. 56.1 Response ¶¶66, 69.

**B. 2. Plaintiff's NYCHRL and NYSHRL Hostile Work Environment Claims Prevail.**

For the reasons set forth herein above and in Section I.A. and II.A. of Plaintiff's Memorandum of Law In Support of His Motion for Summary Judgment, Defendants' motion regarding Plaintiff's NYCHRL and NYSHRL hostile work environment claims should be denied. Crucially, Defendants do not dispute that they never raised the affirmative defense of "petty slights and trivial inconveniences." As such, Defendants should not be permitted to raise that defense here for the first time.[11] Substantively, Defendants are incorrect when they claim that Plaintiff loses because

---

[11] Defendants cite *See Sanderson v. Leg Apparel, LLC,* No. 1:19-cv-8423-GHW2020, WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) which confirms such an affirmative defense "should be raised in the Defendants' Answer."

the racist statements are not "facially discriminatory." *See* Def. MOL, p. 15. It is odd that Defendants would admit to their belief that calling a Black man a "gorilla" is not "facially discriminatory." [12] In any event, without harping further on this disturbing revelation, "facially discriminatory" is not the standard. Indeed "smoking-gun" and "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69, 76, 2001 U.S. App. LEXIS 15480 (2d Cir. July 10, 2001).[13]

Defendants are also incorrect that Mr. Campbell never complained. The Second Circuit has explicitly held that even implicit complaints suffice under the NYCHRL.[14] For example, in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 114, 2013 U.S. App. LEXIS 8494, *27 (2d. Cir. 2013), the Court noted that the Plaintiff testified that her supervisor fired her only after she asked "What's not working out? Me and you or me and the company." *Id.* The Court then held

---

[12] So too is it facially discriminatory to baselessly refer to a Black man as "Trayvon Martin" and a "thief," to accuse him of rioting while he is working at his job. Defendants also allowed Mr. Alzate to harass Mr. Campbell on a daily basis, publicly degrading him and referring to him as "lazy", "motherfucking Kevin" and "piece of shit", ultimately physically assaulting Mr. Campbell, only to have Defendants baselessly label Mr. Campbell "aggressive." While Defendants may believe that this conduct and language is not facially discriminatory, they must present such a defense to a jury.

[13] Defendants cite *Cadet v. Deutsche Bank Sec., Inc*., No. 11-cv-7964 (CM), 2013 WL 3090690, at *10 (S.D.N.Y. June 18, 2013) and *Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 540 (S.D.N.Y. 2001) for their assertion that "subjective belief" is not enough. However, none of the comments contained in those decisions rise to the level of the persistent language and threatening conduct alleged by Mr. Campbell. Neither case involved any allegation of threatening conduct, contrary to what Campbell alleges here. *See Zeng v. N.Y. City Hous. Auth.*, 2023 U.S. App. LEXIS 18035, 2023 WL 4553416 (2d. Cir. July 17, 2023) (Second Circuit reversed the District Court's dismissal of the Plaintiff's hostile work environment claims on summary judgment where the District Court failed to credit the Plaintiff's allegations that coworkers and supervisors invaded her personal space and shouted racial and sexist slurs, forced her to work in unsafe conditions where she was threatened, and improperly limited the Plaintiff's hostile work environment claim to four isolated instances where the Plaintiff had testified that those instances were illustrations of insults that occurred on a more frequent basis.) *Id.,* at 14. As also noted in Section I.A. of Pl. MOL Defendants subjected Mr. Campbell to near-daily racial harassment and discrimination involving veiled threats and physical intimidation, from both Peter Lorenzi and then Alzate. Pl. 56.1 ¶¶ 40-166.

[14] Additionally, as noted above, Mr. Campbell was not required to "exhaust all possible avenues," *Misas, Id.*; have used the word "discrimination" when reporting it, *Krasner, Id.;* report formally or in writing, *Summa, Id.* Nor does the complained of conduct need to be independently unlawful. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012).

that "Under the NYCHRL, by *implicitly* referencing her rejection of his sexual propositions, she *may have* opposed his discrimination by communicating to [Defendant], in substance, that she thought [Defendant's] treatment of her was wrong." *Id.* (cites and quotes omitted) (emphasis added). As such, Defendants assertion that Campbell "failed to report them"[15] is factually incorrect. *See* Pl. 56.1 ¶¶ 167-184, 245, 292-358.

Mr. Campbell also disputes Defendants' assertion that they took appropriate action regarding Peter Lorenzi's racial harassment since Defendants initially attempted to pressure Mr. Campbell not to make a statement, Pl. 56.1 Response ¶34, since Lorenzi received a mere suspension rather than a termination, Pl. 56.1 ¶¶ 178-182 and was allowed to keep his job despite the fact that he was found to be in violation of Policy 2-5 (Acceptable Conduct), the same policy for which Mr. Campbell was terminated for allegedly violating, *Id.*, and since Plaintiff was ostracized and labelled a snitch following this report. Pl. 56.1 Response ¶38. As a result of this, and other rampant racism and dishonesty amongst managers, and employees of which managers were aware, at FedEx, Pl. 56.1 ¶¶ 23-25, 40-166, Mr. Campbell testified that he was "always scared to report anything at that job." Pl. 56.1 Response ¶70. [16] Even assuming Defendants "attempted to deal with each incident, [they] did not do so effectively in a way that prevented further offensive behavior" and as such Defendants may not prevail on summary judgment. *Holt v. DynaServ Indus.*, 2016 U.S. Dist. LEXIS 127750, *34, 2016 WL 4734661 (S.D.N.Y. Sept. 19, 2016).

**C. 1. a. Mr. Campbell's Title VII Retaliation Claim Must Proceed.** Contrary to

---

[15] *See* Def. MOL, p. 16.

[16] The New York Court of Appeals has held that "[c]ondonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense," and "[a]n employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 487 N.E.2d 268, 269, 496 N.Y.S.2d 411 (N.Y. 1985). Here, Defendants repeatedly condoned racism by way of the facts cited here.

Defendants assertion, as set forth in Section B.2. above, and in Section I.C. of Plaintiff's MOL, Mr. Campbell protested and opposed discriminatory comments in front of managers, and these comments were racially discriminatory. Defendants did not enforce their existing disciplinary policies in a reasonable manner because Mr. Campbell was terminated (materially adverse action) for something he didn't do (*See, for example*, Pl. 56.1¶¶126, 127, 144, 265, Pl. 56.1 Response ¶¶79, 86), and was not given the benefit of Defendants' progressive disciplinary procedure or GFT where Defendants fabricated allegations against him and hastened affirmation of his termination rather than reinstating him (materially adverse action), while Peter Lorenzi engaged in more egregious and race-based offenses against Mr. Campbell and was permitted to keep his job (Pl. 56.1 ¶¶ 135, 397-404). Defendants cite *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2014) and *Starzynski v. Stanely Black & Decker, Inc.,* 2022 U.S. App. LEXIS 35262 (2d. Cir. Dec. 21, 2022) for their assertion that Defendants must escape liability because they were merely enforcing preexisting disciplinary procedures in a reasonable way. However, in *Rivera* the Plaintiff in question admitted to the conduct he was disciplined for, and in *Starzynski* the Plaintiff never argued that the discipline was unreasonable. Not so here, where Mr. Campbell denies bumping Mr. Alzate (Pl. 56.1 ¶247), intimidating him (Pl. 56.1 Response ¶79), or engaging in disruptive behavior (Pl. 56.1 Response ¶¶84-85). Contrary to Defendants' assertions, Mr. Campbell never testified that Alzate was intimated or perceived an act of aggression. Neither Alzate himself nor any other employee ever made such allegations. (Pl. 56.1 Response ¶79). Finally, contrary to Defendants' assertions, Mr. Campbell has indeed offered evidence that Defendants violated their own policies and procedures during the GFT and EEO. Pl. 56.1 Response ¶¶ 95-96.

**C. 1. b. Mr. Campbell Has Established a Causal Connection.** As set forth in Section

14

I.C. of Mr. Campbell's MOL and *supra*, he has made this showing. Defendants do not dispute any facts or cases cited by Mr. Cambpell in his MOL on this point.

**C. 2. Mr. Campbell's NYCHRL and NYSHRL Retaliation Claims Must Proceed.** As set forth *supra* and in Plaintiff's MOL Sections I.C., I.D., II.B., and II.C., and contrary to Defendants' assertions, Mr. Campbell has identified adverse actions reasonably likely to deter protected activity (Pl. 56.1 ¶¶ 144, 163, 208-293),[17] and has established a causal connection.[18] Finally, Defendants have no legitimate non-discriminatory reason as set forth above and in Plaintiff's MOL. The First Department has held that "no challenged conduct may be deemed nonretaliatory" unless "a jury could not reasonably conclude from the evidence that such conduct was . . . reasonably likely to deter a person from engaging in protected activity." *Mihalik, Id.,* quoting *Williams v. New York City Hous. Auth.,*, 61 A.D.3d 62, 69, 872 N.Y.S.2d 27, 34, 2009 N.Y. App. Div. LEXIS 433, *8, 2009 NY Slip Op 440, 5, 105 Fair Empl. Prac. Cas. (BNA) 1059 (internal quotation marks removed). This "assessment [should] be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." *Id.*

---

[17] For example, Defendants, at Defendant Warnders' direction, Pl. 56.1 ¶ 135, terminated Mr. Campbell, later falsely claiming they did so because he "shoulder bumped" Mr. Alzate. Pl. 56.1 ¶¶ 144, 265. Defendants also used this pretext to uphold Mr. Campbell's termination in the GFT process, Pl. Pl. 56.1 ¶¶ 264-273, and in their statement to the EEOC. Pl. 56.1 ¶ 163. However, the Defendants do not have any admissible evidence to support their pretextual basis for terminating Plaintiff. Following Plaintiff filing his GFT where he complained again of discrimination, Defendant Warnders sent an email to Nan Malebranche (the "June 1st Email") referring her to the attached video and stills, telling Ms. Malebranch "As you can see there was initial contact on Kevin's part." Pl. 56.1 ¶ 248, and that "one employee clearly states that Kevin threw his shoulder into Alzate and got right into his face." Pl. 56.1 ¶ 250. However, this was a lie as Warnders actually believed Alzate started the altercation and that Alzate initially made contact with Mr. Campbell. Pl. 56.1 ¶ 249. And Defendants falsely stated in their EEOC submission that "the video footage showed Campbell . . . made physical contact with Alzate in the chest area", Pl. 56.1 ¶ 163, and refused to produce the video during the EEOC process. Pl. 56.1 ¶ 290. Whereas Nan Malebranche testified that the security videos do not show Mr. Campbell making physical contact with Alzate. Pl. 56.1 ¶ 164.

[18] As just one example, documentation reflects that a mere six days elapsed between the time Mr. Campbell filed his GFT on May 26, 2021, Pl. 56.1 ¶¶ 243-247, and June 1, 2021 when Defendants began changing their allegations to ensure Mr. Campbell would not receive the full benefit of the GFT. Pl. 56.1 ¶¶ 248-293.

## **CONCLUSION**

For the reasons set forth herein and in Mr. Campbell's MOL, Defendants' motion should be denied in its entirety.

Dated:  New York, New York
January 6, 2025

Massimi Law PLLC

By:  *Jessica Massimi*
————————————
Jessica Massimi
*Attorney for Plaintiff Kevin Campbell*
99 Wall Street, Suite 1264
NY, NY 10005


Cohen and Green PLLC

/s
By:  ——————————
Remy Green
*Attorney for Plaintiff Kevin Campbell*
1639 Centre Street, Suite 216
Ridgewood, NY 11385
Remy@femmelaw.com

To:
Gabriel McGaha
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Rd, Bldg. B, 3rd Floor
Memphis, Tennessee 38125
Telephone: (901) 434-3131
Facsimile: (901) 434-9279
gabriel.mcgaha@fedex.com
Attorney for Defendants' Federal Express
Corporation and Eric Warnders