UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

KEVIN CAMPBELL,

                       Plaintiff,          **DEFENDANTS' MEMORANDUM
                                             IN SUPPORT OF MOTION FOR
                                             SUMMARY JUDGMENT**

     -against-

FEDERAL EXPRESS CORPORATION a/k/a        Civil Action No. 22-cv-7662
FEDEX EXPRESS, and ERIC WARNDERS,
INDIVIDUALLY,

                       Defendants.

----------------------------------------------------------------X

*/s/ Gabriel P. McGaha*_____
Gabriel P. McGaha
(admitted *pro hac vice*)
Federal Express Corporation – Legal
Litigation
3620 Hacks Cross Road
Building B, Third Floor
Memphis, TN  38125
(901) 434-3131 telephone
(901) 434- 9279 facsimile

*Counsel for Defendants
Federal Express Corporation and
Eric Warnders*

Served on: November 18, 2024

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc*.
  477 U.S. 242 (1986)............................................................................................11

*Banks v. Gen. Motors, LLC*,
  81 F.4th 242 (2d Cir. 2023) ................................................................................11

*Black v. ESPN, Inc.*,
  70 Misc. 3d 1217(A), 139 N.Y.S. 3d 523 (N.Y. Sup. Ct. 2021) ........................21

*Boyd v. Presbyterian Hosp. in City of New York*,
  160 F. Supp. 2d 522 (S.D.N.Y. 2001).................................................................16

*Burgess v. New School Univ.*,
  23-cv-4944 (JGK), 2024 WL 4149240 (Sept. 11, 2024) .....................................15

*Cadet v. Deutsche Bank Sec., Inc.*,
  No. 11-cv-7964 (CM), 2013 WL 3090690 (S.D.N.Y. June 18, 2013) ..................16

*Cano v. SEIU Local 32BJ*,
  19-CV-8810 (PAE) (KHP), 2023 WL 4830091 (S.D.N.Y. April 17, 2023) ..........12

*Cronin v. Aetna Life Ins. Co.*,
  46 F.3d 196 (2d Cir. 1995)....................................................................................6

*de la Concha v. Fordham Univ.*,
  5 F. Supp. 2d 188 (S.D.N.Y. 1998)........................................................................6

*Fernandez v. Wenig Saitel, LLP*,
  2024 WL 1345645 (E.D.N.Y. Mar. 29, 2024).......................................................16

*Holt v. Dynaserv, Inc.*
  No. 11-cv-7964 (CM), 2016 WL 5108205 (S.D.N.Y. Sept. 6,
  2016)…………………………………………………………………………16

*Jeune v. City of New York*,
  No. 11 CIV. 7424 JMF, 2014 WL 83851 (S.D.N.Y. Jan. 9, 2014) .......................6

*Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*,
  814 F. Supp. 2d 355 (S.D.N.Y. 2011)..................................................................10

*Livingston v. Roosevelt Union Free Sch. Dist.*,
  No. 17-CV-4189, 2020 WL 1172642 (E.D.N.Y. Jan. 15, 2020) ..........................16

i

*Marchuk v. Faruqi & Faruqi,*
    LLP, 100 F. Supp. 3d 302 (S.D.N.Y. 2015) ...................................................16, 11

*Matthew v. Tex. Comp. Public Accounts,*
    2022 WL 4626511 (S.D.N.Y. Sep. 30, 2022) ........................................................20

*McCall v. Genpack, LLC,*
    No. 13-cv-1947 (KMK), 2015 WL 5730352 (S.D.N.Y. Sept. 30, 2015) ..............16

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ..............................................................................................7

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
    715 F.3d 102 (2d Cir. 2013) .................................................................................10

*Mitchell v. State Univ. of New York Upstate Med. Univ.,*
    723 F. App'x 62 (2d Cir. 2018) ............................................................................18

*In re N.Y.C. Dep't of Educ.,*
    2019 WL 1433163 (S.D.N.Y. Mar. 29, 2019) ......................................................10

*Ndongo v. Bank of China Ltd.,*
    No. 22-cv-5896, 2023 WL 2215261 (S.D.N.Y. Feb. 24, 2023) ............................15

*Payne v. Cornell Univ.,*
    No. 21-109-CV, 2022 WL 453441 (2d Cir. Feb. 15, 2022) ..................................11

*Sanderson v. Leg Apparel, LLC,*
    No. 1:19-cv-8423-GHW2020 .................................................................................15

*Terry v. Ashcroft,*
    336 F.3d 128 (2d Cir.2003)......................................................................................7

*Timbie v. Eli Lilly & Co.,*
    429 F. App'x 20 (2d Cir. 2011) ...............................................................................6

*Van Zant v. KLM Royal Dutch Airlines,*
    80 F.3d 708 (2d Cir.1996)........................................................................................7

*Viera v. Olsten/Kimberly Quality Care,*
    63 F. Supp. 2d 413 (S.D.N.Y. 1999)........................................................................6

*Williams v. Regus Mgmt. Grp., LLC,*
    836 F.Supp.2d 159 (S.D.N.Y. 2011)......................................................................10

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ...........................................................................11

Federal Rule of Civil Procedure 56(e) ..........................................................................................11

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT RELEVANT OF FACTS ................................................................................. 1

LEGAL ARGUMENT ............................................................................................................. 6

    A.    PLAINTIFF CANNOT PROVE DISPARATE TREATMENT ................................. 6

        1.    Campbell's Disparate Treatment Claim Under Title VII and NYSHRL Must Fail. ................... 6

        2.    Campbell's Disparate Treatment Claim Under NYCHRL Must Also Fail. ............................ 10

    B.    CAMPBELL CANNOT PROVE A HOSTILE WORK ENVIRONMENT ................................ 11

        1.    Plaintiff's Hostile Work Environment Claims under Title VII Must Fail. ................................ 11

        2.    Plaintiff's Hostile Work Environment Claims under NYSHRL and NYCHRL Must Fail. ....... 15

    C.    CAMPBELL CANNOT PROVE RETALIATION ........................................................ 17

        1.    Campbell's Retaliation Claim Under Title VII Must Fail. ................................................. 17

        2.    Campbell's Retaliation Claim Under NYCHRL and NYSHRL Must Fail. ............................ 21

## PRELIMINARY STATEMENT

Plaintiff Kevin Campbell alleges Defendants Federal Express Corporation and Eric Warnders wrongfully terminated him and subjected him to a hostile work environment because of his race (Black).  Campbell also alleges Defendants retaliated against him for having reported discrimination prior to his termination.  There is no evidence to support any of Campbell's claims. Campbell was terminated for violating FedEx's Acceptable Conduct Policy following his involvement in an altercation with a co-worker that Campbell admitted to escalating.  Both Campbell and the co-worker, who was of a different race, were terminated. Only after being terminated did Campbell allege that he had been subjected to various incidents of harassment that he acknowledges he had not previously reported.  Campbell reported one incident of harassment prior to his termination, which was immediately investigated and resulted in the suspension of another employee, which Campbell testified was a fair resolution to the incident. Campbell's retaliation claim also fails because he cannot establish a causal connection between a protected activity and an adverse employment action, and because FedEx had a legitimate non-discriminatory reason for terminating him.  For these reasons, the Court should enter summary judgment in favor of Defendants.

## STATEMENT RELEVANT OF FACTS

### FedEx and Its Policies

Defendant Federal Express Corporation ("FedEx") is a global transportation company with facilities located throughout the world. [Defs.' SOUMF ¶ 1.] FedEx employs a diverse workforce, including at its LGA station, where, as of November 14, 2024, the racial demographic makeup was as follows:

<u>LGA total employees - 243</u>
Hispanic - 100
African American- 74
White - 41
Asian - 15
Two or More Races - 6
Not Specified - 5
Native Hawaiian or Other Pacific Islander - 1
Indian or Alaska Native – 1

[Defs.' SOUMF ¶ 2; Campbell Tr. 131:20-25, Pl.'s Exhibit 1.]

FedEx prohibits discrimination and harassment against any applicant or employee on the basis of race.  [*Id.* at ¶ 3.]  Any employee who "believes that he or she has been subjected to harassment by anyone, including supervisors [or] coworkers . . . must immediately report [it] to management, HR, or the HR Compliance Department in Memphis, Tennessee." [*Id.* at ¶ 4.] FedEx's anti-retaliation policy states:

> There will be no retaliation against any employee who reports a claim or incident of sexual or other harassment or against any employee who participates as a witness in a harassment investigation. Any employee who feels that he or she has been subjected to retaliation must immediately make a report to management, HR, or the HR Compliance Department in Memphis, Tennessee.

[*Id.* at ¶ 5.]  FedEx's Acceptable Conduct policy prohibits the following and provides that such conduct can result in termination:

- **Workplace Violence.** Violent or threatening behavior is not tolerated in the workplace. Workplace Violence is any <u>behavior or action that puts someone in a state of fear or concern for their safety</u> or the safety of other team members. Workplace violence can be physical, verbal, or emotional in nature. Workplace violence can include, but is not limited to: <u>aggressive</u>, sexual, <u>or other unwelcome and offensive physical contact</u>, bullying, threats, <u>threatening gestures</u>, stalking, or any verbal or physical act of hostility or aggression that is perceived to put anyone's safety at risk.

- <u>Disruptive conduct</u>, including fighting, while on duty or while on FedEx Express property or at company functions.

- Using violent, threatening, intimidating, coercive, or abusive language; <u>engaging in violent, threatening, intimidating</u>, coercive, or abusive <u>behavior</u>; or

> displaying blatant or public disrespect toward or about any employee, customer, vendor, or member of the public while on duty, on FedEx Express property, or at off-site Company meetings and functions.

[*Id.* at ¶ 6.]

Upon hiring, Plaintiff Kevin Campbell received a copy of the handbook containing FedEx policies and acknowledged that he understood the policies. [*Id.* at ¶ 7.] Campbell had access to FedEx's handbook throughout his employment with the company. [*Id.* at ¶ 8.] Campbell read the entire Acceptable Conduct policy when he was hired at FedEx and understood that workplace violence and disruptive conduct were prohibited. [*Id.* at ¶ 11.]

Campbell received Equal Employment Opportunity and Affirmative Action Overview training on 3/15/18, 2/19/19, 1/16/20, 5/26/20, 6/3/20, and 4/16/21. [*Id.* at ¶ 9.] He received Workplace Violence Prevention training on 3/15/18, 3/13/19, 1/16/20, 5/15/20, 6/1/20, and 4/15/21. [*Id.* at ¶ 10.]

## Lorenzi Incident

After one of Campbell's co-workers, Peter Lorenzi, made the statements alleged in Paragraphs 28 and 32 of the Complaint, Campbell immediately reported it to the first manager he saw, Frank Ontaneda. [*Id.* at ¶ 33.] Ontaneda and Campbell then went to Eric Warnders' office where Campbell "wrote a statement [*Id.* at ¶¶ 34-35.] Following an investigation, Ontaneda, in consultation with HR and Warnders, issued Lorenzi a Warning Letter and suspended him for five days without pay. [*Id.* at ¶ 36.] Campbell agreed Lorenzi's suspension was a fair resolution to this incident. [*Id.* at ¶ 37.] This is the only time Campbell reported discrimination while he was employed with FedEx.

## Alzate Incident and Termination

On May 18, 2021, Campbell and Augusto Alzate (Hispanic) were working adjacent to each other (about five feet distance) during the morning sort when packages are sorted on a conveyor

belt.  [*Id* at ¶ 71.]  Campbell's job was to split the belt (move certain freight off the belt), and Alzate's job was to get the recycle (move the boxes Campbell missed).  [*Id.* at ¶ 72.] Alzate was unhappy with Campbell because he believed Campbell was missing too many boxes. [*Id.* at ¶ 73] Alzate kicked two boxes towards Campbell, which Campbell perceived as an attempt to intimidate or upset him, but Campbell ignored Alzate. [*Id.* at ¶ 74.]  Alzate then pushed a larger box towards Campbell, which hit Campbell's hand. [*Id.* at ¶ 75.]  Importantly, at no point before Alzate hit Campbell with the third box did Campbell consider notifying a member of management that Alzate was being aggressive towards him. [*Id* at ¶ 76.]

In the process of pushing the third box towards Campbell, Alzate closed the distance between him and Campbell from approximately five feet to two feet. [*Id.* at ¶ 77.]  Campbell in turn approached Alzate closing the distance between the two men to approximately six inches. [*Id.* at ¶ 78.]  Campbell acknowledges Alzate could have been intimated when Campbell closed the distance with him to half a foot and that Alzate could have perceived it as an act of aggression. [*Id.* at ¶ 79.]  Alzate responded by pulling out a box cutter, causing Campbell to grab Alzate's arm in an attempt to push it away. [*Id.* at ¶ 80.]  Co-workers who witnessed the incident intervened and wrestled the box cutter from Alzate. [*Id.* at ¶ 81.]  Both Campbell and Alzate were immediately suspended. [*Id.* at ¶ 82.]

The same day, Senior FedEx Security Specialist, James Cahill, opened an investigation into the incident. [*Id.* at 83.]  As part of his investigation, Cahill conducted witness interviews (including interviews of Alzate and Campbell) and reviewed video surveillance footage from two different angles. [*Id.*at ¶ 84.] The results of the investigation determined, *inter alia*, "both Campbell and Alzate were in clear violation of the Workplace Violence Policy."[1] [*Id.* at ¶ 85.]

---

[1] FedEx's Workplace Violence Policy is subsumed within the Acceptable Conduct Policy.  *See* ¶ 6, *supra*.

4

In a letter dated May 25, 2021, Monty Bovell notified Campbell he had been terminated for actively engaging in disruptive behavior with another co-worker, in violation of the Acceptable Conduct Policy (P2-5). [*Id.* at ¶ 86.] Augusto Alzate was also notified in a letter from his manager, Michael Bradley, that he had been terminated for actively engaging in disruptive behavior with another co-worker, in violation of the Acceptable Conduct Policy (P2-5). [*Id.* at ¶ 87.]

**Guaranteed Fair Treatment Procedure**

Both Campbell and Alzate were advised that they could appeal their terminations through FedEx's Guaranteed Fair Treatment Procedure (GFTP). [*Id.* ¶ 88.] Campbell timely submitted the documentation necessary to initiate the GFTP process. [*Id.* at ¶ 89.] During Step 1 of the GFTP process, Campbell alleged for the first time in writing that he had been a victim of a pattern of discrimination and retaliation, alleging various incidents he had not previously reported. [*Id.* at ¶ 90.]

As part of the GFTP process, Campbell met with Reyes, Bovell, Warnders, and Malebranche to discuss his termination. [*Id.* at ¶ 91.] In this meeting, Campbell acknowledged that his actions towards Alzate could be intimidating. [*Id.* at ¶ 92.] Campbell also stated that he did not walk away from the confrontation because he wanted management to see Alzate being angry. [*Id.* at ¶ 93.] Campbell's termination proceeded through Step 2 and Step 3 of the GFTP process in accordance with policy, and his termination was upheld. [*Id.* at ¶ 94.]

**IEEO**

To address the various incidents of discrimination and harassment raised at the GFT meeting, Managing Director, Nan Malebranche, filed an internal equal employment opportunity (IEEO) Complaint on Campbell's behalf. [*Id.* at ¶ 96.] Campbell's alleged incidents of racial discrimination and retaliation were investigated by Lance Reyes (HR advisor) and Malebranche,

who, after interviewing several witnesses (including Campbell) determined Campbell's allegations could not be substantiated. [*Id.* at ¶ 97.]

## LEGAL ARGUMENT

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Disputes over irrelevant facts do not preclude granting summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). Although the burden to prove there are no issues of material fact rests on the moving party, a party may not rely on mere assertions of facts. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); FED. R. CIV. P. 56(e). "If a party fails to properly support an assertion of fact as required by Rule 56(c), then the court may grant summary judgment against it." *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 23 (2d Cir. 2011); *see also de la Concha v. Fordham Univ.*, 5 F. Supp. 2d 188, 191 (S.D.N.Y. 1998) (stating "the opposing party must produce concrete evidence from which a reasonable jury could return a verdict in its favor"). In this case, there exists no genuine issues of material fact, and UPS is entitled to judgment as a matter of law.

### A.    PLAINTIFF CANNOT PROVE DISPARATE TREATMENT

#### 1.    Campbell's Disparate Treatment Claim Under Title VII and NYSHRL Must Fail.[2]

The elements of a discrimination claim under Title VII and NYSHRL are identical. *Viera v. Olsten/Kimberly Quality Care*, 63 F. Supp. 2d 413, 418 n.1 (S.D.N.Y. 1999) ("The analysis for discrimination claims under the NYHRL is the same as that under Title VII."); *see also Jeune v.*

---

[2] In this section, Defendants address Campbell's disparate treatment claim in the context of his termination. While Campbell also appears to generally allege Defendants "cut his hours" because of his race, he has proffered no specific evidence of this claim to which Defendants can adequately respond. [*See* Defs.' SOUMF ¶¶ 28-29.]  In any case, there is no evidence Defendants cut Campbell's hours.

*City of New York*, No. 11 CIV. 7424 JMF, 2014 WL 83851, at \*4 (S.D.N.Y. Jan. 9, 2014).  To establish a claim of discrimination under either of these statutes, a plaintiff must plead that "(1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination." *Id.*

To the extent a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the defendant does so, then the burden then shifts back to the plaintiff to show "pretext."  *Id.* at 804–05.  To establish pretext sufficient to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)). The plaintiff must proffer "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason" for the challenged actions. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (internal quotation marks and alteration omitted) (emphasis added).

Here, Defendants do not dispute that Campbell was a member of a protected class, was competent to perform his job, or that he suffered a materially adverse employment action (termination).  Campbell's Title VII and NYSHRL claims fail, however, because his termination

did not arise under circumstances that give rise to an inference of discrimination and because FedEx had a legitimate non-discriminatory reason for terminating him that was not pretextual.

      a.  <u>Campbell's termination did not arise under circumstances giving rise to an inference of discrimination.</u>

Campbell cannot establish that his termination was upheld based on circumstances giving rise to an inference of discrimination. Campbell has proffered no evidence to support a finding that the individuals involved in either the decision to terminate him or to uphold his termination – operations manager, Monty Bovell (Black), HR advisor, Lance Reyes (Black), senior manager, Eric Warnders (White), or managing director, Nan Malebranche (Spanish, Irish, and German) - harbored any discriminatory animus. At most, Campbell alleges (without any documentary evidence other than his memory) that three years earlier, he told Warnders that his manager at the time, Henry Nunez, told him "Black people are always making excuses about why they can't do things. This is why I hate working with Black people" and that Warnders "continued requiring Campbell to work as Nunez's direct report." [Compl. ¶ 24-25.]  Even if this were true (it is not), Campbell testified that the incident was handled "appropriately" and in a "professional manner" and thought Warnders "did what he needed to do to make it go away." [Defs.' SOUMF ¶ 27.][3] Moreover, an employee outside Campbell's protected group was also terminated for his involvement in the same incident. [Defs.' SOUMF ¶ 86-87.]  For these reasons, Campbell cannot establish that the termination occurred under circumstances giving rise to an inference of discrimination.

      b.  <u>FedEx had a legitimate non-discriminatory reason for terminating Campbell.</u>

---

[3] While Defendants do not deny this allegation for purposes of summary judgment, Nunez testified that he told Campbell to "stop being lazy about it" after Campbell expressed discontent that he was going to have to start returning to the station to complete his work day instead of riding along with another courier for his entire shift.  [Nunez Tr. 107:15-20; 108:13 – 111:3.]

Even if Campbell could establish a *prima facie* case for disparate treatment, FedEx had a legitimate non-discriminatory reason for terminating Campbell – namely, that he engaged in disruptive behavior in violation of FedEx's Acceptable Conduct Policy after his involvement in an altercation with Augusto Alzate (Hispanic) on May 18, 2021.  [Defs.' SOUMF ¶¶ 71, 85-87.] FedEx's Acceptable Conduct Policy provides that engaging in certain conduct, including the following, may result in termination:

- **Workplace Violence.** Violent or threatening behavior is not tolerated in the workplace. Workplace Violence is any <u>behavior or action that puts someone in a state of fear or concern for their safety</u> or the safety of other team members. Workplace violence can be physical, verbal, or emotional in nature. Workplace violence can include, but is not limited to: <u>aggressive</u>, sexual, <u>or other unwelcome and offensive physical contact</u>, bullying, threats, <u>threatening gestures</u>, stalking, or any verbal or physical act of hostility or aggression that is perceived to put anyone's safety at risk.

- <u>Disruptive conduct</u>, including fighting, while on duty or while on FedEx Express property or at company functions.

- Using violent, threatening, intimidating, coercive, or abusive language; <u>engaging in violent, threatening, intimidating</u>, coercive, or abusive <u>behavior</u>; or displaying blatant or public disrespect toward or about any employee, customer, vendor, or member of the public while on duty, on FedEx Express property, or at off-site Company meetings and functions.

[Defs.' SOUMF ¶¶ 6-11.]

While FedEx's investigation determined that Alzate initiated the altercation on May 18, 2021, it also determined that Campbell contributed to escalating it by approaching Alzate instead of walking away and notifying a manager. [Defs.' SOUMF ¶¶ 74-81.]  Campbell's direct manager, Monty Bovell (Black), HR advisor, Lance Reyes (Black), and Senior Manager, Eric Warnders (White) all consistently testified that Campbell was terminated for engaging in disruptive conduct when he escalated the incident with August Alzate (Hispanic) by aggressively approaching him. [Bovell Tr. 99:15 – 100:6; 94:4-17; Reyes Tr. 57:15 – 58:2; 63:13 – 20; Warnders Tr. 100:2-13.] Managing Director, Nan Malebranche (Spanish, Irish, and German) testified that Campbell's

termination was upheld at the GFTP stage for the same reason. [Malebranche Tr. 60:18 – 61:16; 73:9 – 75:10.] Crucially, Campbell acknowledges Alzate could have been intimated by Campbell aggressively approaching him. [Campbell Tr. 379:22 – 380:21; Cahill Dec. (Exhibit A-C).] Accordingly, the Court should grant summary judgment in favor of Defendants on Campbell's disparate treatment claims under Title VII and NYSHRL.

> ### 2.    Campbell's Disparate Treatment Claim Under NYCHRL Must Also Fail.

Discrimination claims under the NYCHRL are more liberally construed than their state and federal counterparts and are to be analyzed separately from federal and state claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Under the NYCHRL, the plaintiff is not required to show he was subjected to a tangible adverse employment action, but rather that he was treated "less well than other similarly situated employees, at least in part for discriminatory reasons." *In re N.Y.C. Dep't of Educ.*, 2019 WL 1433163, at *13 (S.D.N.Y. Mar. 29, 2019) (citation omitted); *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)). Importantly, however, evidence of differential treatment must be "more than trivial, insubstantial, or petty." *Williams v. Regus Mgmt. Grp., LLC*, 836 F.Supp.2d 159, 173 (S.D.N.Y. 2011). The evidence adduced must still support an inference of discrimination. *Williams*, 836 F.Supp.2d at 177; *see also Kerman–Mastour v. Fin. Indus. Regulatory Auth.*, 814 F.Supp.2d 355, 367 (S.D.N.Y. 2011) ("[E]ven under the more liberal NYCHRL, summary judgment will still be appropriate where a plaintiff does not adduce sufficient evidence of a link between her termination and a discriminatory motive . . . .").

Campbell has proffered no evidence to establish he was treated "less well than similarly situated employees, at least in part, for discriminatory reasons." *See In re N.Y.C. Dep't of Educ.*,

2019 WL 1433163, at *13.  First, Campbell has not specifically identified an employee with whom he seeks to compare himself nor has he presented any evidence that the decision to terminate him or to uphold the termination was motivated by discriminatory animus.  *See Fernandez v. Wenig Saitel, LLP*, 2024 WL 1345645, at *19 (E.D.N.Y. Mar. 29, 2024).  To the extent Campbell seeks to assert he was treated "less well" than Alzate, this argument fails because, as explained *supra*, both Alzate and Campbell were terminated for the same conduct.  Accordingly, the Court should enter summary judgment in favor of Defendants on Campbell's NYCHRL disparate treatment claim.

### B.    CAMPBELL CANNOT PROVE A HOSTILE WORK ENVIRONMENT

#### 1.    Plaintiff's Hostile Work Environment Claims under Title VII Must Fail.

To prevail on a hostile work environment claim under Title VII, "[a plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, at *3 (2d Cir. Feb. 15, 2022) (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019)).  To survive summary judgment, a plaintiff must proffer evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment" and "that the employer either provided no reasonable avenue for complaint or knew of the harassment and did nothing about it." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 25 (2d Cir. 2023); *Marchuk v. Faruqi & Faruqi*, LLP, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015).  Here, Campbell's hostile work environment claim fails because the only conduct Defendants were aware of prior to his termination was not severe or pervasive such to alter the conditions of Campbell's employment.

11

Under FedEx policy, "[a]ny employee who believes that he or she has been subjected to harassment by anyone, including supervisors [or] coworkers . . . must immediately report [it] to management, HR, or the HR Compliance Department in Memphis, Tennessee." [Defs.' SOUMF ¶ 4.] Campbell was employed with FedEx for approximately five years. [Defs.' SOUMF ¶¶ 12, 86.] The only record FedEx has of Campbell ever reporting discriminatory harassment prior to his termination was in June 2020, when he reported that a co-worker, Peter Lorenzi, called him "Trayvon" and made a comment related Campbell "having running water in the projects."[4] [*See* Compl. ¶¶ 28, 32.] It is undisputed that Campbell immediately reported this incident, which resulted in an immediate investigation, and culminated in Lorenzi being issued a Warning Letter and a five-day suspension without pay. [Defs.' SOUMF ¶¶ 33-36.] Campbell testified he believed the incident was resolved fairly. [*Id.* at ¶ 37.]

Only after Campbell was terminated did he, for the first time, allege he had been subjected to various incidents of discriminatory conduct while employed with FedEx. [Defs.' SOUMF ¶ 90.] Understanding that failing to report these incidents would be fatal to any hostile work environment claim, Campbell now alleges that various members of management were present when some of the alleged discriminatory statements were made. Other than his own self-serving testimony, Campbell has no evidence to support this assertion. Further, all of the alleged statements were made by hourly employees (several of whom Campbell cannot identify) and are, therefore, inadmissible hearsay. *See Cano v. SEIU Local 32BJ*, 19-CV-8810 (PAE) (KHP), 2023 WL 4830091 at *14 (S.D.N.Y. April 17, 2023) (declining to consider out-of-court statement by non-

---

[4] Campbell also alleges that in 2018, he told senior manager, Eric Warnders that direct manager, Henry Nunez, said "Black people are always making excuses about why they can't do things. This is why I hate working with Black people." [Compl. ¶ 24.] Campbell has offered no evidence to corroborate this assertion and FedEx has no record of Campbell ever reporting that Nunez engaged in any discriminatory conduct while Campbell was employed with FedEx. (*See* n. 2, *supra*).

management employee for purposes of summary judgment). The Court should not consider these alleged statements on these grounds alone.

Defendants, nonetheless, address the alleged discriminatory conduct Campbell raised after he was terminated as follows:

- **Unspecified allegedly "blatantly racist views expressed in the wake of George Floyd's murder"- [Compl. ¶ 27.]**
  - o At his deposition, Campbell could not identify any FedEx employee who expressed blatantly racist views in the wake of the George Floyd murder. [Defs.' SOUMF ¶ 31.]
  - o Prior to his termination, Campbell never reported these alleged racist views being expressed. [Defs.' SOUMF ¶ 32.]

- **Being called a "snitch" - [Compl. ¶ 39.]**
  - o At his deposition, Campbell could not name anyone who allegedly called him a "snitch." [Defs.' SOUMF ¶ 38.]
  - o Prior to his termination, Campbell never reported that anyone called him a "snitch." [Defs.' SOUMF ¶ 39.]

- **Broken scanners and hanging up - [Compl. ¶ 40.]**
  - o Prior to his termination, Campbell never reported that Angela Lorenzi gave him broken package scanners or that she hung up on him when he called to provide work-related information. [Defs.' SOUMF ¶¶ 41-42.]

  - o Campbell is "pretty sure" Angela Lorenzi handed out broken package scanners to other couriers as well. [Campbell Tr. 179:12-21.]

- **Stolen TV allegation – [Compl. ¶¶ 42-43.]**
  - o Campbell did not report "Rob the Mechanic's" alleged statements prior to being terminated but wishes he had done so. [Defs.' SOUMF ¶¶ 46-47.]

- **Gorilla in a cage allegation – [Compl. ¶ 50.]**
  - o Campbell did not report the alleged comments made in Paragraph 50 of the Complaint to HR or any member of management prior to being terminated but wishes he had done so. [Defs.' SOUMF ¶¶ 48-49.]
  - o Campbell does not allege a member of management witnessed this statement being made. [*See* Compl. ¶ 50.]

- **Car radio allegation – [Compl. ¶¶ 51-52.]**
  - o Campbell did not tell managers Michael Bradley or Brad Pasqualicchio that he believed the alleged comment made by David Almeda was racially

offensive but believes Bradley and Pasqualicchio should have interpreted it to be racially offensive. [Defs.' SOUMF ¶¶ 50-51.]

o   Campbell did not report the alleged statements set forth in Paragraph 51 of the Complaint prior to being terminated and never considered reporting it to his manager or HR. [Defs.' SOUMF ¶¶ 52-53.]

o   Campbell acknowledges, in hindsight, he should have reported this statement and "every other racial statement that was said to [him]" "just to get it on record." [Defs.' SOUMF ¶ 55.]

- **Bradley office discussion and alleged "screaming" and "discipline" [Compl. ¶¶ 54-60.]**

o   Campbell testified that when Bradley asked to speak with him in his office, "[he] just wanted to check on [Campbell] to see how [Campbell] was doing." [Defs.' SOUMF ¶ 57.]

o   The "disciplining" and "reprimanding" alleged in Paragraph 59 of the Complaint was Bradley telling Campbell's direct manager, Monty Bovell, that Campbell was not labeling packages, and Bovell calling Campbell to ask him "kindly to come back to the building" to do so. [Defs.' SOUMF ¶ 60.]

o   At his deposition, Campbell could not name anyone who Bradley knew was not labeling packages and who Bradley did not "reprimand." [Defs.' SOUMF ¶ 61.]

o   No one witnessed Bradley allegedly screaming at Campbell to put labels on boxes. [Defs.' SOUMF ¶ 62.]

- **Alleged Vehicle Comments and Scratch [Compl. ¶¶ 63-67.]**

o   Campbell did not report the statements alleged in Paragraph 64 prior to being terminated. [Defs.' SOUMF ¶ 65.]

o   Campbell has no evidence that the person who allegedly "vandalized [his] vehicle was someone that [sic] was upset that [Campbell] wrote a statement about Lorenzi." [Defs.' SOUMF ¶ 66.]

o   Campbell does not know whether his car was keyed while he was at FedEx. [Defs.' SOUMF ¶ 68.]

o   Campbell's belief that his car was keyed at FedEx was based on a "gut feeling." [Defs.' SOUMF ¶ 69.].

o   While Campbell told Nunez that he believed his car was keyed at FedEx, he did not tell Nunez that he believed it was done because of his race. [Defs.' SOUMF ¶ 70.]

Based on the foregoing undisputed facts (based exclusively on Campbell's own testimony), the Court should not consider these alleged incidents in its analysis of Campbell's hostile work environment claim. However, even if the Court were to consider these incidents, and assume they were true, none of them on their face establish discriminatory intent.  For these reasons, the Court

should grant Defendants summary judgment on Plaintiff's Title VII hostile work environment claims.

### 2.    Plaintiff's Hostile Work Environment Claims under NYSHRL and NYCHRL Must Fail.

Under the NYSHRL, "harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in [a] protected categor[y]." *Matthew v. Tex. Comp. Public Accounts*, 2022 WL 4626511 at *10 (S.D.N.Y. Sep. 30, 2022) (emphasis added).[5] Nonetheless, similar to claims under the NYCHRL, a NYSHRL hostile work environment claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences." *Ndongo v. Bank of China Ltd.*, No. 22-cv-5896, 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023); *see also Burgess v. New School Univ.*, 23-cv-4944 (JGK), 2024 WL 4149240, at *21 (Sept. 11, 2024).

Even construing Campbell's allegations in a light most favorable to him, he has not established that the alleged statements/incidents are facially discriminatory and are anything beyond petty slights and inconveniences. *See Sanderson v. Leg Apparel, LLC,* No. 1:19-cv-8423-GHW2020, WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) ("[On summary judgment] a defendant may defeat an NYCHRL claim by showing that the defendant's conduct amounted to no more than petty slights and trivial inconveniences.") Campbell's conclusion that the statements/incidents alleged above were discriminatory is subjective, at best, and is based on innuendo, speculation,

---

[5] Prior to 2019, NYSHRL and Title VII hostile work environment claims were analyzed in the same manner. However, the NYSHRL was amended in August 2019 to bring the standard "closer to that of the [NYCHRL]" with respect to hostile work environment claims. *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189, 2020 WL 1172642, at *11 n.5 (E.D.N.Y. Jan. 15, 2020). The 2019 amendment removed the Title VII "severe and pervasive" requirement and now states "harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in [a] protected categor[y]." *Matthew v. Tex. Comp. Public Accounts*, 2022 WL 4626511 at *10 (S.D.N.Y. Sep. 30, 2022).

and surmise. *See Cadet v. Deutsche Bank Sec., Inc.*, No. 11-cv-7964 (CM), 2013 WL 3090690, at *10 (S.D.N.Y. June 18, 2013) ("subjective belief that [comments] were racially-motivated is not sufficient to create a genuine issue of material fact with respect to" his hostile work environment claim); *see also Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 540 (S.D.N.Y. 2001) ("While the Plaintiff may indeed subjectively feel that the work environment was a hostile one, Plaintiff's subjective belief is not enough.").

In addition to Campbell's failure to establish that the alleged statements/incidents were discriminatory, his claim also fails under the NYSHRL and NYCHRL, because he failed to report them.  In the one instance when Campbell *did* report alleged discriminatory conduct - the Lorenzi incident - Defendants took swift action to investigate and rectify it, which culminated in suspending a fellow employee.  It is, therefore, logical to conclude that had Campbell reported other incidents of harassment, Defendants would have taken the same action.  *See Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (an employer is not liable under the NYSHRL unless the employer "encouraged, condoned, or expressly or impliedly approved" the conduct). Thus, without alerting Defendants to the alleged discriminatory conduct and permitting them to take corrective action, Campbell cannot impute liability to them under NYSHRL or NYCHRL. *See Holt v. Dynaserv Indus.*, Inc., No. 11-cv-7964 (CM) 2016 WL 5108205, at *10 (S.D.N.Y. Sept. 19, 2016) (granting summary judgment to employer on plaintiff's NYSHRL hostile work environment claim because there was no evidence employer "condoned, encouraged or approved the harassing conduct alleged by plaintiff"); compare with, *McCall v. Genpack, LLC*, No. 13-cv-1947 (KMK), 2015 WL 5730352, at *29 (S.D.N.Y. Sept. 30, 2015). (denying employer's motion for summary judgment because plaintiff complained "multiple times

16

and no corrective action was taken, which . . . would permit a jury to decide that the employer condoned it")

It is also undisputed that FedEx provides employees with a multitude of ways to report discriminatory, harassing, or threatening conduct, including by notifying a member of manager or HR, submitting an Internal IEEO packet, or calling the FedEx Alert Line. [Defs.' SOUMF ¶ 98.] Upon hiring, Campbell received a copy of the handbook containing FedEx policies and acknowledged that he understood the policies. [*Id*. at ¶ 7.] Yet, Campbell failed to utilize these policies and procedures to report the incidents he claims give rise to his hostile work environment claim. For these reasons, the Court should grant Defendants summary judgment on Campbell's NYSHRL and NYCHRL hostile work environment claims.

## C.    CAMPBELL CANNOT PROVE RETALIATION

### 1.    Campbell's Retaliation Claim Under Title VII Must Fail.

Campbell alleges Defendants retaliated against him by:

(1) failing to protect the confidentiality of Mr. Campbell's complaints against Mr. Lorenzi and labeling Mr. Campbell a snitch, Pl. 56.1 ¶¶ 208-230, 234-242; (2) giving him broken package scanners to attempt to force failure, Pl. 56.1 ¶¶ 231-233; (3) failing to intervene to stop Augusto Alzate's daily public tirades against Mr. Campbell, Pl. 56.1 ¶¶ 94-111; (4) ultimately terminating Mr. Campbell's employment after Mr. Alzate attacked him with a box cutter, Pl. 56.1 ¶¶ 112-166; (5) constructing a knowingly false narrative during his post-termination grievance proceeding that Mr. Campbell was aggressive and "bumped" the person who attacked him despite (undisputedly) subjectively finding the "bump[]" allegation not credible and having no evidence for the claim, Pl. 56.1 ¶¶ 144, 164, 243-293; and (6) conducting a sham Internal EEO investigation into Mr. Campbell's complaints of discrimination to further discredit his discrimination complaints and to affirmatively cover their own misconduct. Pl. 56.1 ¶¶ 294-358.

[Pl.'s Memo in Support of Mot. For Sum. J. at 3.]

"To sustain a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate '(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Mitchell v. State Univ. of New York Upstate Med. Univ.*, 723 F. App'x 62, 63 (2d Cir. 2018). A "protected activity" is any activity which is taken to "protest or oppose" unlawful employment practices under Title VII. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000) (construing 42 U.S.C. § 2000e–3(a)).

Campbell alleges he engaged in the following protected activities:

> Mr. Campbell engaged in protected activity by complaining (1) to Defendants about Henry Nunez's discrimination (Pl. 56.1 ¶¶ 167-172); (2) to Defendants about Peter Lorenzi's discrimination (Pl. 56.1 ¶¶ 173-182); (3) to managers who were present when another employee made false comments accusing Plaintiff of stealing a car radio (Pl. 56.1 ¶¶ 183-184); and finally, (4) when Mr. Campbell filed his GFT detailing several instances of discrimination. Pl. 56.1 ¶¶ 243-247.

[Pl.'s Memo in Support of Mot. For Sum. J. at 15.] The alleged comments that were made while managers "were present" is not a protected activities for at least two reasons. First, Campbell took no action to "protest or oppose" unlawful discrimination. Second, Campbell has failed to establish that the alleged comment about a car radio being stolen had anything to do with his race. The only protected activities Campbell arguably engaged in were – (1) allegedly complaining "about Nunez's discrimination" in 2018; (2) reporting discriminatory conduct by Peter Lorenzi; and (3) allegations of past instances of discrimination made during the GFT process. However, Campbell's retaliation claim still fails as a matter of law.

a.  <u>Campbell has not suffered a materially adverse employment action.</u>

"Actions that are 'trivial harms'—i.e., "those petty slights or minor annoyances that often take place at work and that all employees experience"—are not materially adverse." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 668 (2d Cir. 2011). Campbell's assertion that

18

(1) failing to protect the confidentiality of Mr. Campbell's complaints against Mr. Lorenzi and labeling Mr. Campbell a snitch; (2) giving him broken package scanners to attempt to force failure; and (3) failing to intervene to stop Augusto Alzate's daily public tirades are not materially adverse. "As the Court reminded us in *Burlington*, Title VII does not set forth '"a general civility code for the American workplace."'" 548 U.S. at 68, 126 S.Ct. 2405 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 668 (2d Cir. 2011). In the context of a retaliation claim, a "materially adverse" employment action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tepperwien v. Entergy Nuclear Operations,* Inc., 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). An employer's "enforce[ment] [of] its preexisting disciplinary policies in a reasonable manner" does not amount to a materially adverse employment action. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2d Cir. 2014) (quotation marks omitted). Here, Campbell has testified that after Alzate pushed the third box at Campbell, Campbell approached Alzate closing the distance between the two men to approximately six inches. [Defs.' SOUMF ¶ 78.] Campbell also acknowledged that Alzate could have been intimidated when Campbell closed the distance with him and that it could have perceived it as an act of aggression. [*Id.* at ¶ 79.] FedEx's policy clearly states:

- **Workplace Violence.** Violent or threatening behavior is not tolerated in the workplace. Workplace Violence is any behavior or action that puts someone in a state of fear or concern for their safety or the safety of other team members. Workplace violence can be physical, verbal, or emotional in nature. Workplace violence can include, but is not limited to: aggressive, sexual, or other unwelcome and offensive physical contact, bullying, threats, threatening gestures, stalking, or any verbal or physical act of hostility or aggression that is perceived to put anyone's safety at risk.

- Disruptive conduct, including fighting, while on duty or while on FedEx Express property or at company functions.

- Using violent, threatening, intimidating, coercive, or abusive language; engaging in violent, threatening, intimidating, coercive, or abusive behavior; or displaying blatant or public disrespect toward or about any employee, customer, vendor, or member of the public while on duty, on FedEx Express property, or at off-site Company meetings and functions.

Therefore, based on Campbell's own testimony, FedEx simply applied its preexisting disciplinary policies in a reasonable manner, which is not a materially adverse employment action as a matter of law. *See Starzynski v. Stanley Black & Decker, Inc.*, 2022 WL 17825920 (2d Cir. Dec. 21, 2022). Further, Campbell has not proffered any evidence that FedEx violated its policies during either the GFT stage or in investigating Campbell's IEEO complaint. In fact, it is undisputed that Nan Malebranche filed the IEEO on Campbell's behalf after he alleged incidents of discrimination during the GFT meeting that Campbell acknowledges he had not previously reported. [Defs.' SOUMF ¶ 96.]

    b. Campbell cannot establish a causal connection between the alleged protected activities and adverse actions.

Even if Campell could establish a materially adverse action, there is no causal connection between the alleged protected activities and the adverse action. To be sure, there is simply no nexus between Campbell allegedly telling Eric Warnders in 2018 that Henry Nunez told him that he did not like working with black people and Campbell being terminated approximately three years later. It bears emphasizing that Campbell's complaint does not allege any acts of discrimination or harassment between summer 2018 and summer 2020. Similarly, there is no nexus between Campbell reporting discriminatory conduct by Peter Lorenzi in summer 2020 and Campbell's termination approximately one year later. In fact, the actions taken after Campbell did report discriminatory conduct bely Campbell's retaliation claim. Finally, there is no causal connection between Campbell engaging the GFT process and any materially adverse action.

Campbell testified he was not deprived of an opportunity to engage in the GFT process, and that he was able to present "everything [he] wanted to present." [Campbell Tr. 404:3-11.]

In short, Campbell has not established a *prima facie* case for retaliation. However, even if he could, FedEx had a legitimate non-discriminatory reason for terminating Campbell's employment, as set forth *supra*, and it followed its policies during the GFT and IEEO processes. Accordingly, the Court should grant summary judgment in favor to Defendants on Campbell's Title VII retaliation claim.

### 2.    Campbell's Retaliation Claim Under NYCHRL and NYSHRL Must Fail.

Similar to Title VII, "[i]n order to state a claim of retaliation under the NYSHRL and NYCHRL, a plaintiff must allege: (1) The participation in a protected activity, (2) That the defendant was aware of the protected activity, (3) An adverse employment action, or under the NYCHRL, the employer's actions disadvantaged plaintiff and were reasonably likely to deter a person from engaging in protected activity, [and] (4) A causal connection between the protected activity and the adverse employment action." *Black v. ESPN, Inc.*, 70 Misc. 3d 1217(A), 139 N.Y.S. 3d 523 (N.Y. Sup. Ct. 2021).

Similar to the analysis under Title VII, Campbell's claims fail on the final two elements. That is, Campbell has not identified an adverse action that and were reasonably likely to deter a person from engaging in protected activity.  To the contrary, the one time Campbell did report discrimination, Defendants took swift action to investigate his complaint, which resulted in the suspension of the employee alleged to have engaged in discriminatory conduct.  In addition, there is no causal connection between the alleged protected activity and adverse employment action as set forth above.  Finally, even if Campbell could establish a *prima facie* case, FedEx had a legitimate non-discriminatory reason for terminating Campbell's employment as set forth *supra*,

and FedEx followed its policies to ensure Campbell was treated fairly during the GFT process and IEEO investigation.   Accordingly, the Court should grant summary judgment in favor to Defendants on Campbell's Title VII retaliation claim.

## **CONCLUSION**

There is no evidence to support Campbell's disparate treatment, hostile work environment, or retaliation claims.  Campbell was terminated for violating FedEx's Acceptable Conduct Policy following his involvement in an altercation with a co-worker that Campbell admitted to escalating. Both Campbell and the co-worker, who was of a different race, were terminated. Only after being terminated did Campbell allege that he had been subjected to various incidents of harassment that he acknowledges he had not previously reported.  Campbell reported one incident of harassment prior to his termination, which was immediately investigated and resulted in the suspension of another employee, which Campbell testified was a fair resolution to the incident. Campbell's retaliation claim also fails because he cannot establish a causal connection between a protected activity and an adverse employment action, and because FedEx had a legitimate non-discriminatory reason for terminating him.  For these reasons, the Court should enter summary judgment in favor of Defendants.

Dated: November 18, 2024.

Respectfully submitted,


*/s/ Gabriel P. McGaha*_____
Gabriel P. McGaha
(seeking *pro hac vice* admission)
Federal Express Corporation – Legal Litigation
3620 Hacks Cross Road
Building B, Third Floor
Memphis, TN  38125
(901) 434-3131 telephone
(901) 434- 9279 facsimile

*Counsel for Defendants*
*Federal Express Corporation and*
*Eric Warnders*

24