UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KEVIN CAMPBELL,                                    <u>Oral Argument Requested</u>

                    Plaintiff,          DEFENDANTS' REPLY BRIEF
                                                   IN SUPPORT OF THEIR MOTION
                                                   FOR SUMMARY JUDGMENT
                                                   AND IN OPPOSITION TO
                                                   PLAINTIFF'S MOTION FOR
                                                   <u>SUMMARY JUDGMENT</u>

   -against-

FEDERAL EXPRESS CORPORATION a/k/a                  Civil Action No. 22-cv-7662
FEDEX EXPRESS, and ERIC WARNDERS,
INDIVIDUALLY,
                        Defendants.
------------------------------------------------------------------X

                                                 <u>/s/ Gabriel P. McGaha</u>
                                                 Gabriel P. McGaha
                                                 (admitted *pro hac vice*)
                                                 Federal Express Corporation – Legal Litigation
                                                 3620 Hacks Cross Road
                                                 Building B, Third Floor
                                                 Memphis, TN  38125
                                                 (901) 434-3131 telephone
                                                 (901) 434- 9279 facsimile
                                                 gabriel.mcgaha@fedex.com

                                                 *Counsel for Defendants*
                                                 *Federal Express Corporation and*
                                                 *Eric Warnders*

Served on: February 19, 2025

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bart v. Golub Corp.*,
  96 F.4th 566 (2d Cir. 2024) ...................................................................................................4

*Bautista v. PR Gramercy Square Condo.*,
  642 F.Supp.3d 411 (S.D.N.Y. 2022)......................................................................................10

*Burke v. Deer–Park Union Free Sch. Dist.*,
  No. 08 Civ. 3600(JS)(ARL), 2011 WL 477736 (E.D.N.Y. Feb. 3, 2011)................................3

*Chi Ho Lin v. N.Y. City Admin. for Children's Servs.*,
  2000 WL 1844773 (S.D.N.Y. Dec. 18, 2000) .........................................................................6

*Economou v. Caldera*,
  23-cv-4944 (JGK), 2024 WL 4149240 (Sept. 11, 2024) .......................................................10

*Flanagan v. Trader Joe's East, Inc.*,
  No. 24-675, 2025 WL 18151 (2d Cir. Jan. 2, 2025) ................................................................2

*Fleming v. MaxMara USA*,
  644 F. Supp. 2d 247 (E.D.N.Y. 2009) .....................................................................................7

*Golden v. Syracuse Regional Airport Authority*,
  No. 23-1311, 2024 WL 4116427 (2d Cir. Sep. 9, 2024) .........................................................4

*Jeune v. City of New York*,
  No. 11 CIV. 7424 JMF, 2014 WL 83851 (S.D.N.Y. Jan. 9, 2014) .........................................1

*Klein v. Brookhaven Health Care Facility*,
  CV 17-4841 (JS) (ARL), 2023 WL 7413838 (E.D.N.Y. July 20, 2023).................................2

*Levy v. Kosher Overseers Assn. of Am., Inc.*,
  No. 92 Civ. 8377, 2000 WL 294842 (S.D.N.Y. Mar. 21, 2000) ...........................................10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)...................................................................................................10

*Monahan v. City of New York*,
  10 F.Supp.2d 420 (S.D.N.Y.1998) ........................................................................................10

*Newbury v. City of Niagara Falls*,
  No. 23-7976-cv, 2025 WL 323340 (2d Cir. Jan. 29, 2025)....................................................2

*Nieblas-Love v. New York City Hous. Auth.*,
    165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016)...............................................................8

*Rimpel v. AdvantageCare Physicians, P.C.*,
    486 F. Supp. 3d 625 (E.D.N.Y. 2020) ........................................................................7

*Salter v. Cath. Health Sys.*,
    No. 15-CV-322, 2017 WL 3981097 (W.D.N.Y. Sept. 11, 2017) ..............................6

*Saunders v. New Horizons Computer Learning Ctr. of Metro. New York*,
    2002 WL 1067823 (S.D.N.Y. May 29, 2002) ...........................................................7

*Schwind v. EW & Associates,*
    357 F.Supp.2d 691 (S.D.N.Y. 2005).........................................................................10

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27, 40 (2009) .............................................................10

# TABLE OF CONTENTS

A. **Campbell Has Not Met His Burden of Showing that His Termination Occurred Under Circumstances Giving Rise to an Inference of Discrimination**............. 1

    1. Peter Lorenzi and Kevin Campbell are not similarly situated........................ 1

    2. Both Campbell and Alzate's conduct contributed to the altercation that resulted in their terminations…………………………………………………………......... 3

B. **Campbell Has Not Established that FedEx's Reason for Terminating His Employment Was Pretextual**……………………………………………………… 4

    1. Campbell has not identified any inconsistency in Defendants' legitimate nondiscriminatory reason for termination……………………………………... 4

    2. Campbell has proffered no evidence of discriminatory animus from anyone involved in his termination……………………………………………………. 6

C. **Campbell Has Not Established that He Was Treated Less Well than an Employee Outside His Protected Class**…………………………………………… 7

D. **Campbell Has Failed to Establish a Hostile Work Environment Under Title VII, NYSHRL, or the NYCHRL**……………………………………………………... 7

    1. Campbell made key admissions in his Response to Defendants' Statement of Undisputed Material Facts that defeat his hostile work environment claim……... 8

    2. Campbell cannot dispute his own testimony regarding the incidents he claims constituted a hostile work environment…………………………………….. 9

E. **Campbell's Retaliation Claims Fail as a Matter of Law Under Title VII, NYSHRL, and NYCHRL**……………………………………………………. 11

F. **The Business Records Introduced in Sharon Daniel and James Cahill's Respective Declarations are Admissible**……………………………………… 12

A. **Campbell Has Not Met His Burden of Showing that His Termination Occurred Under Circumstances Giving Rise to an Inference of Discrimination.[1]**

For Campbell to establish a *prima facie* case that he was wrongfully terminated based on his race under Title VII or NYSHRL, he must proffer evidence that the termination occurred under circumstances that give rise to an inference of discrimination. *Jeune v.City of New York*, No. 11 CIV. 7424 JMF, 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014). In his Reply Brief, Campbell argues he has met this burden by showing (1) Peter Lorenzi was treated more favorably despite having also violated the Acceptable Conduct Policy; and (2) Alzate "engaged in violence and dishonesty not alleged against Campbell." [Pl.'s Reply Brief at 1-3.] Neither of these arguments satisfy Campbell's burden.

1. **Peter Lorenzi and Kevin Campbell are not similarly situated.[2]**

As explained in Defendants' MOL, approximately one year before Campbell was terminated following his altercation with Augusto Alzate, another co-worker, Peter Lorenzi, received a Warning Letter and five-day suspension without pay after Campbell reported and an investigation revealed that Lorenzi called Campbell "Trayvon" and made a comment related to Campbell not "having running water in the projects." [Defs'. Mot. Summ. J. at 12.] FedEx's investigation determined that Lorenzi had violated FedEx's Acceptable Conduct Policy by

---

[1] Campbell appears to have abandoned his argument that his hours were cut. To the extent he maintains this claim, he has still proffered no evidence to support it, as Campbell's hourly records speak for themselves. [Defs.' SOUMF ¶ 29.] Even if FedEx did cut Campbell's hours, it had a non-pretextual reason for doing so since it is undisputed Campbell did not have a license and was the only courier at the station without a license. [Pl.'s Resp. to Defs.' SOUMF ¶¶ 12-14.] Because he could not drive a truck, it became inefficient for him to continue to be on the road riding along with another driver every day, so he was assigned to return to the station after the mall stop. [*See* Nunez Tr. 105:3 – 106:13.] Campbell has proffered zero evidence his hours were cut because of his race.

[2] While the question of whether an employee is "similarly situated" with a co-worker is typically discussed at the pretext stage of the *McDonnell-Douglas* analysis, Defendants will address it in this section in response to Campbell's argument that he and Peter Lorenzi should have received the same discipline for violating FedEx's Acceptable Conduct Policy.

1

engaging in "inappropriate and unprofessional comments towards a coworker that were deemed racially insensitive." [*See* Pl.'s Exhibit 20.]

Campbell contends that since both he and Lorenzi violated the Acceptable Conduct Policy, they should have received the same discipline, without regard to context or the severity of their respective violations. Campbell's argument is both factually and legally deficient. First, the Acceptable Conduct Policy, while not exhaustive, prohibits a wide range of conduct enumerated within the policy and states that such conduct "may result in severe disciplinary action, *up to and including* termination." [*See* Pl.'s Exhibit 31 (emphasis added).]

Second, the fact that Lorenzi and Campbell were disciplined under the same policy is not dispositive of whether they were similarly situated. For a plaintiff to be similarly situated to a co-worker outside his protected class, he must show, *inter alia*, that he and the co-worker engaged in "substantially similar" conduct and that the co-worker received preferential treatment. *See Klein v. Brookhaven Health Care Facility*, CV 17-4841 (JS) (ARL), 2023 7413838 (E.D.N.Y. July 20, 2023); *see also Flanagan v. Trader Joe's East, Inc.*, No. 24-675, 2025 WL 18151 at *2 (2d Cir. Jan. 2, 2025). Here, it is clear Campbell and Lorenzi did not engage in substantially similar conduct. While Lorenzi referred to Campbell as "Trayvon" and made a statement related to "running water in the projects," Campbell encouraged and participated in a physical altercation that disrupted the workplace, temporarily shut down FedEx's operation, and could have resulted in serious injury to FedEx employees. Because Peter Lorenzi did not engage in the same conduct, Campbell and Lorenzi are not similarly situated.[3] *See Newbury v. City of Niagara Falls*, No. 23-7976-cv, 2025 WL 323340, at *5 (2d Cir. Jan. 29, 2025) ("[N]o reasonable juror would find that

---

[3] To the extent Campbell argues that he and Henry Nunez are also similarly situated, this argument fails for the same reasons cited here. [*See* Pl.'s Reply Brief at 1.]

2

Newbury's male counterparts were similarly situated to Newbury because their respective training deficiencies were not "of comparable seriousness.")

### 2. Both Campbell and Alzate's conduct contributed to the altercation that resulted in their terminations.

Campbell argues that even though he and Alzate (Hispanic) were involved in the same incident that led to their terminations, Alzate's conduct was "worse" than his. Specifically, Campbell contends:

> Mr. Alzate undisputedly engaged in violence and dishonesty not alleged against Mr. Campbell. Mr. Alzate engaged in violent conduct by approaching Mr. Campbell unprovoked, in a clearly agitated state flailing his arms and pushing several boxes in Campbell's direction, hitting him with a box; wielded a box cutter at Mr. Campbell.

[Pl.'s Reply Brief at 3.] However, Campbell ignores his own conduct. According to his own testimony, Campbell chose not to notify a manager or walk away from the incident. [*See* Pl.'s Resp. to Defs.' SOUMF ¶¶ 76-78.] To the contrary, after Alzate pushed a third box towards Campbell that hit his hand, Campbell closed the distance between the two men from two feet to six inches, which resulted in Alzate pulling out a box cutter to defend himself and subsequent disruption and shutdown of FedEx's operation. [*Id.*] Therefore, whether Alzate "started it" and/or his conduct was "worse" is immaterial; it is undisputed that both Campbell and Alzate were culpable in the incident that resulted in their terminations. Because Alzate in not in Campbell's protected class, Campbell has failed to proffer evidence that his termination occurred under circumstances that give rise to an inference of discrimination. *See Burke v. Deer–Park Union Free Sch. Dist.*, No. 08 Civ. 3600(JS)(ARL), 2011 WL 477736, at *4 (E.D.N.Y. Feb. 3, 2011) (finding that a plaintiff's subjectively held beliefs relating to allegedly discriminatory comments are not sufficient to support an inference of discrimination). Accordingly, Campbell's Title VII and NYSHRL claims must fail as a matter of law.

3

### B. Campbell has not established that FedEx's reason for terminating his employment was pretextual.

After an employer has articulated a legitimate non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show either that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination," or that, "even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Golden v. Syracuse Regional Airport Authority*, No. 23-1311, 2024 WL 4116427, at *1 (2d Cir. Sep. 9, 2024) (citing *Bart v. Golub Corp.*, 96 F.4th 566, 575 (2d Cir. 2024). To meet the latter standard, the plaintiff must produce "admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Bart v. Golub Corp.*, 96 F.4th at 576 (citation omitted). Here, Campbell cannot meet this burden because he has proffered no evidence of discriminatory animus from any person involved in his termination.

### 1. Campbell has not identified any inconsistency in Defendants' legitimate nondiscriminatory reason for termination.

Campbell contends that "key evidence" upon which Defendants relied to support FedEx's decision to terminate him was "fabricated as evidenced by Defendants' inconsistent statements . . . ." [Pl.s' Reply Brief at 4.] But Campbell fails to explain *how* Defendants' statements about the reason for his termination have been inconsistent.

Campbell argues that FedEx's EEOC position statement, indicating that there was evidence that Campbell made physical contact with Alzate is somehow inconsistent with the legitimate nondiscriminatory reason stated in Defendants' Motion - "that Mr. Campbell was terminated for engaging in 'disruptive behavior.'" [Pl.'s Reply Brief at 5.] However, FedEx's position has been

4

very consistent. After FedEx cites evidence indicating that Campbell made physical contact with Alzate in its position statement, the next two sentences state as follows:

> FedEx's investigation substantiated that both men engaged in disruptive conduct in violation of the acceptable conduct policy. Thus, FedEx terminated **both** Campbell and Alzate for engaging in disruptive behavior in violation of the acceptable conduct policy.

[Pl.'s Exhibit 37 (emphasis in original).] There is, therefore, no "inconsistency," as Campbell claims.[4]

Next, Campbell argues that (1) an email from Eric Warnders to Nan Malebranche stating, in part, "As you can see there was initial contact on Kevin's part"; (2) a letter from Malebranche to Campbell stating that Campbell "trigger[ed] the physical altercation" and stating that "A close look at the actions that led to the altercation, as well as the statements from witnesses, indicates your responsibility for inciting [Alzate]"; and (3) an email from Warnders to FedEx Executive Ops Administrator Stephanie Reycraw stating, in part, that Campbell's "aggressive actions incited the physical altercation" somehow contradicts the statement in Defendants' MOL that "FedEx's investigation determined Alzate initiated the altercation on May 18." [Pl.'s Reply Brief at 5.] Again, however, Campbell's assertion is misleading. The full quote from Defendants' MOL is:

> While FedEx's investigation determined that Alzate initiated the altercation on May 18, 2021, *it also determined that Campbell contributed to escalating it by approaching Alzate instead of walking away and notifying a manager*. [Defs.' SOUMF ¶¶ 74-81.]

---

[4] It is undisputed that FedEx's Acceptable Conduct Policy specifically prohibits "disruptive conduct, including fighting, while on duty or while on FedEx Express property or at company functions." [Pl.'s Resps. to Defs.' SOUMF ¶ 6.] While the term "disruptive conduct" is all encompassing, the evidence indicates Campbell and Alzate's also violated other provisions of the Acceptable Conduct policy, including prohibitions against "workplace violence" and "engaging in violent, threatening, intimidating, coercive, or abusive behavior." [*Id.*] Campbell, for example, admitted after he was terminated that his actions during the altercation with Alzate could have been intimidating. [Defs.' SOUMF ¶ 92.]

5

[Defs.' MOL at 9 (emphasis added).] Therefore, none of these e-mail/letter excerpts contradict Defendants' consistent position that Campbell was terminated for engaging in disruptive conduct in violation of FedEx's Acceptable Conduct Policy. Accordingly, Campbell has failed to establish either pretext or that his race was a motivating factor in the decision to terminate his employment or uphold the termination.

**2. Campbell has proffered no evidence of discriminatory animus from anyone involved in his termination.**

While Campbell insists that he was terminated because of his race, he has failed to proffer evidence that anyone involved in the decision to terminate him or to uphold his termination were motivated by discriminatory animus. *Salter v. Cath. Health Sys.*, No. 15-CV-322, 2017 WL 3981097, at *6 (W.D.N.Y. Sept. 11, 2017); ("Without any evidence of discriminatory animus, the crux of Plaintiff's case for pretext is the same as her *prima facie* case — her belief that she was disciplined unfairly because of her race. This is insufficient to survive summary judgment). Specifically, Campbell has proffered no evidence that Monty Bovell (direct manager), Lance Reyes (HR representative), Eric Warnders (senior manager), or Nan Malebranche (managing director) harbored any racial animus.[5] On the other hand, Defendants have proffered evidence that Campbell's termination *was not* a result of racial animus, most notably that a person outside Campbell's protected class (Alzate) was terminated for his involvement in the *same incident*. Campbell's *belief* that he and Alzate should not have received the same discipline is insufficient

---

[5] While not completely dispositive, it bears emphasizing that Bovell, Campbell's direct manager who signed his termination letter, and Reyes, the HR manager who supported the termination, share the same race as Campbell. *See Chi Ho Lin v. N.Y. City Admin. for Children's Servs.*, 2003 WL 21973361 n.2 (S.D.N.Y. Aug. 19, 2003) (noting that "many of the events about which plaintiff complains involved actions taken by . . . one of plaintiff's supervisors, who is of both the same race and national origin as plaintiff"). To the extent Campbell seeks to pursue a cat's paw theory – that is, that Bovell and Reyes were somehow motivated by the discriminatory animus of Warnders and/or Malebranche – Campbell has offered no evidence to support such a claim.

6

to meet his burden.[6] *See Rimpel v. AdvantageCare Physicians, P.C.*, 486 F. Supp. 3d 625, 639 (E.D.N.Y. 2020) 639 ("While Plaintiff may be sincere in his belief that he did not behave towards colleagues in a hostile or inappropriate manner, the weight of the evidence contradicts such a belief."); *Fleming v. MaxMara USA*, 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009) ("[A] plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact.") *aff'd*, 371 Fed. App'x 115 (2d Cir. 2010); *see also Saunders v. New Horizons Computer Learning Ctr. of Metro. New York*, 2002 WL 1067823, at *4 (S.D.N.Y. May 29, 2002) ("An employer's belief that an employee violated company policy need not be accurate to serve as a legitimate reason for termination, as long as that belief was honestly held."), aff'd, 68 Fed. App'x 224 (2d Cir. 2003).

### C. Campbell Has Not Established that He Was Treated Less Well than an Employee Outside His Protected Class.

Campbell has not established that he was treated less well than employees outside his protected class, as required under the NYCHRL, for the reasons set forth in Defendants' MOL and articulated *supra*.

### D. Campbell Has Failed to Establish a Hostile Work Environment Under Title VII, NYSHRL, or the NYCHRL.

Campbell is aware that his hostile work environment claim is fatally flawed because, except for the Lorenzi incident, he did not report that the alleged statements by co-workers were

---

[6] It bears noting that Campbell does not contend that he was not culpable and, therefore, should not have been disciplined at all for his involvement in the altercation with Alzate. Rather, he argues that he should have received the "same progressive discipline" that Peter Lorenzi received for unrelated conduct. [Pl.'s Reply Brief at 7.]

racially offensive until after he was terminated.[7] [8] Importantly, the Lorenzi incident occurred *before* the other incidents Campbell claims contributed to the hostile work environment. It is undisputed that after Campbell reported the comments Lorenzi made to him, FedEx promptly investigated the incident, resulting in Lorenzi receiving a Warning Letter with a five-day suspension without pay. [Pl.'s Resp. to Defs.' SOUMF ¶¶ 33-36.] Therefore, Campbell's contention that he was "always scared to report anything" is both implausible and not borne out by the facts. [*See* Pl.'s Reply Brief at 13.]

1. **Campbell made key admissions in his Response to Defendants' Statement of Undisputed Material Facts that defeat his hostile work environment claim.**

These admissions include:

- **RE: Being called a "snitch" - [Compl. ¶ 39.]**
    o Campbell never reported he was called a "snitch" until after he was terminated. [Pl.'s Resp. to Defs.' SOUMF ¶ 39.]

- **RE: Broken scanners and hanging up - [Compl. ¶ 40.]**
    o Campbell never reported that co-worker, Angela Lorenzi (Peter Lorenzi's wife), allegedly gave him broken package scanners and allegedly hung up on him for reporting her husband until after he was terminated. [Pl.'s Resp. to Defs.' SOUMF ¶¶ 41-42.]

- **RE: "Gorilla in a cage" allegation - [Compl. ¶ 50.]**
    o Campbell did not report this alleged comment to a member of management until after he was terminated. [*Id.* at ¶ 48; *see also* Campbell Tr. 210:11 – 211:6 (testifying that "Roberta" was not a member of management).]
    [Campbell Tr. 198:3-12, Pl.'s Exhibit 1.]

---

[7] Although Campbell's Response to Defendants' Statement of Undisputed Material facts attempts to "dispute" some of his own testimony that he did not report the incidents compromising the alleged hostile work environment until after he was terminated, Campbell's testimony speaks for itself. *See Nieblas-Love v. New York City Hous. Auth*., 165 F. Supp. 3d 51, 67 n.2 (S.D.N.Y. 2016) (granting summary judgment on one of plaintiff's retaliation claims based on his own contradictory testimony).

[8] Campbell also claims that in 2018, he told Eric Warnders that his manager at the time, Henry Nunez told him, "Black people are always making excuses about why they can't do things. This is why I hate working with Black people." [*See* Defs.' Memo in Support of Mot. Summ. J. at 8.] While both Warnders and Nunez testified that this did not occur, even if it were true, Campbell does not dispute that the incident was handled "appropriately" and in a "professional manner" and thought Warnders "did what he needed to do to make it go away." [Pl.'s Resp. to Defs.' SOUMF ¶ 27.]

8

- **RE: Car radio allegation – [Compl. ¶¶ 51-52.]**
  - Campbell's contention that he "reported" co-worker Almeda's alleged statement, "Doesn't this guy look like someone who would steal your car radio and then try to sell it back to you" was based on him responding by turning to Pasqualicchio and Bradley and saying, "Do you see what I have to deal with?" [Pl.'s Resp. to Defs.' SOUMF ¶ 50.]

  - Campbell believed Bradley and Pasqualicchio should have interpreted the comment to be racially offensive. [*Id.* at ¶ 51.]

- **RE: Bradley office discussion and alleged "screaming" and "discipline" [Compl. ¶¶ 54-60.]**
  - At his deposition, Campbell could not name anyone who Bradley knew was not labeling packages and who Bradley did not reprimand. [Pl.'s Resp. to Defs.' SOUMF ¶ 61.]

2. **Campbell cannot dispute his own testimony regarding the incidents he claims constituted a hostile work environment.**

In addition to the above admissions, in some portions of his Reply Brief and Response to Defendants' Statement of Undisputed Material Facts, Campbell attempts to ignore and/or misstate his own testimony. For example:

- **RE: Stolen TV allegation – [Compl. ¶¶ 42-43.]**
  - <u>Campbell Reply Brief:</u>
    "Mr. Campbell reported 'Rob the Mechanic's' stolen tv statements at the time." [Pl.'s Reply Brief at 10.]

  - <u>Campbell Deposition:</u>
    Q: The answer is yes or no. Did you tell Henry (Nunez) that you believed that the joke was – that the statement was racially offensive?
    A: No.
    Q: All right. So you assumed, did you assume that Henry understood that the joke was racially offensive?
    A: Yes.

[Campbell Tr. 198:3-12, Pl.'s Exhibit 1.]

Based on the foregoing, it is clear that, with the exception of the Lorenzi incident, Campbell did not report the alleged discriminatory statements by co-workers until after he was terminated.

9

Even if he had reported them, however, most of these incidents, even taken together, are little more than petty slights and trivial inconveniences.[9] Moreover, even if these words were uttered exactly as Campbell described, because he did not report them and provide FedEx an opportunity to investigate them, it is impossible to interpret them in their full context. As set forth in Defendants' MOL, "the NYCHRL is not a 'general civility code,' and a plaintiff 'still bears the burden of showing that the conduct is caused by a discriminatory motive.'" *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 40 (2009)). Moreover, "isolated remarks that a reasonable person would consider 'nothing more than petty slights and trivial inconveniences' cannot support a hostile work environment claim under the NYCHRL."[10] *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 122 (S.D.N.Y. 2020) ("Even under the NYCHRL, 'petty slights or trivial inconveniences ... are not actionable.'") (citation omitted); *Bautista v. PR Gramercy Square Condo.*, 642 F.Supp.3d 411, 428 (S.D.N.Y. 2022) ("Isolated incidents of

---

[9] In his Reply Brief, Campbell argues that the "gorilla in a cage" comment is facially discriminatory. Even conceding this point, it is, again, undisputed that Campbell did not report this incident until after he was terminated, at which point it was investigated along with the other allegations Campbell revealed post-termination. [Defs.' SOUMF ¶ 96.]

[10] Campbell argues that Defendants should be precluded from arguing that the alleged incidents that constituted a hostile work environment were petty slights and/or trivial inconveniences because Defendants did not specifically assert this defense in their Answer. [Pl.'s Reply Brief at 1 n.1.] However, Campbell has cited no case law that states that a defendant is precluded from raising this defense at summary judgment simply because it was not asserted in an Answer. Defendants are also not aware of any case law applying such a draconian rule. Furthermore, it is well-settled in this Circuit that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Monahan v. City of New York*, 10 F.Supp.2d 420 (S.D.N.Y.1998) (citations omitted). Here, Campbell has not been prejudiced by Defendants raising the "petty slights and trivial inconveniences" affirmative defense in their summary judgment motion because he is aware of the facts supporting the defense and has had an opportunity to respond. *See Schwind v. EW & Associates*, 357 F.Supp.2d 691, 698 (S.D.N.Y. 2005); *see also Economou v. Caldera*, 2000 WL 1844773, at *15 (S.D.N.Y. Dec. 18, 2000) (allowing affirmative defense of failure to exhaust administrative remedies to be considered even though defense was not pleaded in answer where there was no evidence of bad faith on part of defense counsel and no prejudice to plaintiff because plaintiff had knowledge of facts upon which defense was based and notice of possibility defense would be asserted). Furthermore, "[w]here an affirmative defense is asserted for the first time in support of a defendant's motion for summary judgment, a court may construe the summary judgment motion as a motion to amend the answer, and granting summary judgment permits such an amendment *de facto*." *Schwind*, 357 F.Supp.2d at 698 (quoting *Levy v. Kosher Overseers Assn. of Am., Inc.*, No. 92 Civ. 8377, 2000 WL 294842, at *7 (S.D.N.Y. Mar. 21, 2000)).

unwelcome verbal and physical conduct . . . .constitute the kind of 'petty slights and trivial inconveniences' that are not actionable even under . . . NYCHRL.").

### E. Campbell's Retaliation Claims Fail as a Matter of Law Under Title VII, NYSHRL, and NYCHRL.

As set forth in Defendants' MOL and *supra*, after the Lorenzi incident occurred, Campbell did not report any of the alleged incidents of discriminatory harassment until after he was terminated. To the extent any of these incidents were "reported" or allegedly perpetrated by managers, they were nothing more than petty slights and/or trivial inconveniences. Therefore, Campbell's claim that he was retaliated against by being subjected to a hostile work environment fails as a matter of law under Title VII, NYSHRL, and NYCHRL.

With respect to his termination, Campbell testified that instead of walking away and/or contacting a manager when he saw that Alzate was acting aggressively towards him, Campbell engaged with Alzate, closing the distance between the two men to, by Campbell's estimate, from two feet to six inches. [Campbell Tr. 377:14 – 379:21, Pl.'s Exhibit 1.] While Campbell denies "bumping" Alzate, he was not terminated for "bumping" Alzate – he was terminated for engaging in disruptive conduct. As every person involved in the decision to terminate his employment and/or uphold the decision to terminate testified, Campbell would not have been terminated had he walked away or contacted a manager:

- "After . . . reviewing the video with security, yes, I believe that [Campbell] was aggressive." [Bovell Tr., Pl.'s Exhibit 8.]

- "[Campbell] should have called a manager. . . . Any manager he could find." [Reyes Tr., 61:19-21, Pl.'s Exhibit 9.]

- "I saw him walk towards Alzate when he should have walked away." [Warnders Tr. 100:3-4, Pl.'s Exhibit 2.]

- "All of our employees receive workplace violence training, and at that point, Kevin should have walked away and gotten a manager. He should have never engaged

11

with Augusto, but he should have gotten a manager." [Malebranche Tr. 57:24 – 58:2, Pl.'s Exhibit 3.]

Campbell's decision to engage with Alzate, which he does not dispute, constitutes a violation of FedEx's Acceptable Conduct policy, which resulted in his termination. Therefore, even if Campbell were to make out a *prima facie* case for retaliation, Defendants had a legitimate non-discriminatory reason for terminating his employment. In short, Campbell has not produced evidence sufficient to permit a reasonable factfinder to conclude that any adverse employment action was based on pretext.

### F. The Business Records Introduced in Sharon Daniel and James Cahill's Respective Declarations are Admissible.

In support of their Motion for Summary Judgment, Defendants submitted a Declaration on behalf of Sharon Daniel, Senior Paralegal Specialist, who authenticated nine FedEx business records. [*See* Defs.' Mot. Summ. J. (Exhibit A).] Similarly, Defendants submitted a Declaration on behalf of Senior FedEx Security Specialist, James Cahill, who authenticated FedEx security records, including surveillance footage reviewed as part of the workplace violence investigation following the incident involving Campbell and Alzate.

Campbell baselessly argues that reliance on Daniel's Declaration is not proper because Daniel "did not draft" the records and because the records relate to "events of which she has no knowledge." [Pl.'s Resp. to Defs.' SOUMF ¶ 1.] He also argues that the surveillance videos attached to Cahill's Declaration are not admissible. [*Id.* at ¶ 32.] Campbell's arguments are without merit for several reasons:

First, these records are offered pursuant to the business records exception set forth in Rule 803(6) of the Federal Rules of Evidence. Daniel meets all the requirements set forth in the rule, which, incidentally, does not require Daniel to have personally authored the records nor does it

require that she have personal knowledge of the facts they contain. Second, Campbell has not otherwise shown that the records lack trustworthiness. *Id.* Third, based on the erroneous standard Campbell articulates, the FedEx business records attached as exhibits to his own Motion for Summary Judgment would be inadmissible for the same reason.[11]

Similarly, James Cahill's Declaration speaks for itself and meets all the requirements of Rules 803 and 901 of the Federal Rules of Evidence.[12] For these reasons, the documents introduced through the Declarations of Daniel and Cahill should be admitted as part of the summary judgment record.

Dated: February 19, 2024.

Respectfully submitted,

/s/ Gabriel P. McGaha
Gabriel P. McGaha
(seeking *pro hac vice* admission)
Federal Express Corporation – Legal Litigation
3620 Hacks Cross Road
Building B, Third Floor
Memphis, TN  38125
(901) 434-3131 telephone
(901) 434- 9279 facsimile

*Counsel for Defendants*
*Federal Express Corporation and*
*Eric Warnders*

---

[11] In fact, unlike Defendant FedEx, Campbell did not even attempt to authenticate these business records. However, Defendants do not object to their introduction as it is important that the Court have all the information necessary to grant Defendants' Motion for Summary Judgment.

[12] The surveillance videos in question were the first documents produced to Campbell when this case commenced. Campbell's counsel subsequently deposed Cahill about the substance of his investigation, which included this surveillance footage. At no point has the authenticity or veracity of these videos been questioned.